**Ted R. MANOS, d/b/a Bunny Hop Inn, Plaintiff,**

v.

**CITY OF GREEN BAY, a Wisconsin municipal corporation, et al., Defendants.**

**Civ. A. No. 72–C–372.**

United States District Court, E. D. Wisconsin.

Jan. 21, 1974.

Gregory B. Conway, Green Bay, Wis., for plaintiff.

Richard G. Greenwood, Asst. City Atty., City of Green Bay, Green Bay, Wis., for defendants.

REYNOLDS, Chief Judge:

This is a civil rights case concerning the authority of a common council of Green Bay, Wisconsin to refuse to renew the liquor license of a tavern owner be-

cause he-allows topless dancers to perform in his tavern. Jurisdiction is claimed under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983. This matter is presently before the court on cross-motions for summary judgment.

In Wisconsin the authority to grant liquor licenses is delegated by law to the common council of each city. Section 176.05(1) of the Wisconsin Statutes [1] states that:

"[e]ach * * * common council may grant retail licenses, under the conditions and restrictions in this chapter contained, to such persons entitled to a license under this chapter *as they deem proper* to keep places within their respective towns, villages, or cities for the sale of intoxicating liquors. * * *" (Emphasis added.)

A license is valid for one year only, and the common council is required to hold an annual meeting to decide whether it should be renewed. Wis.Stats. § 176.-05(5) and (8).[2] The plaintiff is a tavern owner whose application for renewal of his Class B Liquor License was denied by the defendant members of the Green Bay City Council at their 1972 annual meeting.

The history of the present action is as follows. On December 1, 1971, two police officers of the City of Green Bay entered the Bunny Hop Inn owned by the plaintiff Ted R. Manos, and while on the premises they observed a single dancer, dancing bare breasted in the presence of patrons in violation of Section 27.10 of the City Ordinances.[3] Trial was held before the Honorable Frank G. van Laanen, Municipal Justice, Municipal Police Court, on February 22, 1972 and March 17, 1972. On April 28, 1972, a written decision was rendered upholding the City Ordinance and a finding of fault was entered against Ted R. Manos and Jacqueline Collins. The Municipal Police Court is not a court of record, and by agreement between the attorneys for both sides, it was understood that whoever lost at the Municipal Court level would appeal to the Circuit Court for Brown County. An appeal was forthwith perfected, pursuant to § 300.10, Wis.Stats., and a trial *de novo* was begun in Branch 1 of the Circuit Court. On June 14, 1972, however, the Protection and Welfare Committee of the Common Council of the City of Green Bay voted to refuse to grant the plaintiff's application for a renewal of his liquor li-

---

1. Section 176.05(1) was construed by the Supreme Court of Wisconsin in State ex rel. Ruffalo v. Common Council of City of Kenosha, 38 Wis.2d 518, 157 N.W.2d 568 (1968), to grant broad discretion to the local common council, subject only to the requirement that their action not be arbitrary, capricious, or discriminatory. To the extent that the failure to renew plaintiff's license discriminates, the argument that plaintiff is entitled to relief under state law, since the council's action discriminated against him on the basis of the style of dancing in his tavern has some force. On the basis of the record before me defendants have never attempted to overcome this by showing that the topless dancing led to increased crime, parking problems, health hazards, or other tangible evils. All would agree that the defendants could consider such matters.

2. Section 176.05(5) provides that the licensing year shall run from July 1 to June 30. Section 176.05(8) provides the applicable dates for action by the village boards and common councils. It states in part:
"All town and village boards and common councils, or the duly authorized committees

of such councils, shall meet not later than May 15 of each year and be in session from day to day thereafter, so long as it may be necessary, for the purpose of acting upon such applications for license as may be presented to them on or before April 15, and all applications for license so filed shall be granted, issued or denied not later than June 15 for the ensuing license year, provided that nothing shall prevent any governing body from granting any licenses which are applied for at any other time. * * *"

3. Section 27.10, City Ordinances, City of Green Bay, states:
"No person shall appear in any public place in a state of nudity, or in any indecent or lewd dress, or make any indecent exposure of his or her person, or be guilty of any indecent or lewd act, language, written or spoken, or behavior, or shall sell, exhibit or offer to sell any indecent or lewd book, picture or anything lewd or indecent, or shall exhibit or perform any indecent, lewd or immoral play or presentation within the City."

cense for the 1972–1973 year. On June 20, 1972, the full Common Council of the City of Green Bay ratified and affirmed this action.

The plaintiff commenced the present action on June 23, 1972. On June 26, 1972, this court granted a temporary restraining order which ordered the City of Green Bay to issue forthwith a Class B Liquor License and continue this license in force until further order of the court.[4] Shortly thereafter, on July 18, 1972, the plaintiff was granted what was purported to be a quasi-judicial hearing.[5] Several days prior to the hearing, plaintiff was served with notice of the issue which was presented at the hearing.[6]

At the quasi-judicial hearing, one of the police officers testified that in late December 1971 at the tavern owned and operated by Ted R. Manos, he personally observed a female entertainer dancing on a stage with no covering on the areola of her breasts. On the basis of this sole incident the Common Council decided to deny plaintiff's application for re-

newal of his liquor license. A transcript of the hearing was made and is presently before the court. It shows that at the hearing plaintiff was afforded the right to confront the evidence and cross-examine witnesses under oath who testified against him; that he was represented by legal counsel; that he was allowed to present witnesses under oath and evidence of his own; and that the ultimate decision of the Council was based on evidence adduced at the hearing.

On July 25, 1972, the defendant City of Green Bay moved this court for summary judgment dissolving the temporary restraining order. Plaintiff opposed this motion and in his own right moved the court for summary judgment granting a permanent mandatory injunction.

When the time arrived for consideration of license renewal for the 1973–74 license year, the plaintiff again applied for a license. The Protection and Welfare Committee once again recommended to the full Council that the plaintiff's application be denied. On June 19, 1973, the full Council accepted this rec-

4. The order was granted for a thirty-day period. The temporary restraining order was extended for approximately seven weeks, and then extended again until further order of the court. Apparently plaintiff believed the restraining order protected him regardless of whether he paid the customary license fee of $300. In this belief plaintiff was mistaken. Implicit in the order was the assumption that plaintiff's license would be renewed subject to the ministerial requirements ordinarily imposed on the other tavern owners whose license applications were granted. Since plaintiff operated a calendar year under the restraining order, the full amount of the license fee appears to be owing.

5. The phrase "quasi-judicial hearing" is that utilized by the defendants, and is hereby adopted for purposes of this opinion.

6. The notice conveyed to plaintiff by the defendants stated in part:

"PLEASE TAKE NOTICE that a quasi-judicial hearing will be held * * * ; and the Common Council will consider whether or not your Class B Retail Fermented Malt Beverage and Intoxicating Liquor License for the operation of your business at the Bunny Hop Inn should be renewed pursuant to the provisions of Wisconsin Statutes, Section 176.05(8) ; and

"You are further notified that the Common Council will consider at that time evidence that you have violated the Common Council's resolution declaring policy guidelines for entertainment adopted by the Common Council on June 17, 1969, in that during the past license year female entertainers have been performing at your business establishment at the Bunny Hop Inn in a state which is popularly known as topless dancing; and

"You are hereby notified that at the time of said hearing you have the right to be personally present and represented by counsel, and you will have the right to confront sworn witnesses under oath who would be called to support the aforementioned charges, as well as have said witnesses cross-examined under oath, and you have the right to present evidence in your own behalf by witnesses which you choose to produce under oath; and furthermore, if you so desire, you may contact the Chairman of the Protection and Welfare Committee, Gordon Kropp, 806 Garden Street, Green Bay, Wisconsin and require the issuance of subpoenas in your behalf; and furthermore, in addition to the aforementioned, you shall have the right to make a verbatim record and have the transcript preserved for judicial review."

ommendation and did deny the plaintiff his license. No quasi-judicial hearing was granted the plaintiff although his counsel was allowed to make a few remarks to the members of the City Council. On June 25, 1973, plaintiff asked for an extension of the temporary restraining order which was still in effect at that time. On June 29, 1973, I denied plaintiff's motion, and on the basis of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed. 2d 446 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12,200 ft. Reels of Super 8mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), and California v. LaRue, 409 U.S. 818, 93 S.Ct. 35, 34 L.Ed.2d 74 (1972), I vacated the temporary restraining order on the grounds that plaintiff no longer enjoyed a likelihood of success on the merits.[7]

The parties have stipulated that plaintiff allows his dancers to perform topless and that the reason for the denial of his license was this practice's apparent violation of the following resolution of the Green Bay City Council, adopted June 17, 1969:

"BE IT FURTHER RESOLVED that the following guidelines be established for entertainers:

\* \* \* \* \* \*

"3. That costumes worn by female entertainers shall be visible and of non-transparent material, and must be sufficient to cover the areola of the breast and must completely cover the mons pubis.

\* \* \* \* \* \*

I find there is no genuine issue as to any material facts.

I.

At the threshold, two questions arise. First, can a § 1983 action, which could not be brought against the city itself, be brought against the individual members of the City Council? Second, does any significance attach to the fact that the liquor license was refused for violating a resolution rather than an ordinance?

A.

■ In City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the Supreme Court specified that a municipal corporation was not a "person" within the meaning of § 1983, even in an action for equitable relief. The Court stated at 513, 93 S.Ct. at 2226:

"We find nothing in the legislative history discussed in *Monroe* [Monroe v. Pope, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)], or in the language actually used by Congress, to suggest that the generic word 'person' in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe*, 'Congress did not undertake to bring municipal corporations within the ambit of' § 1983, *id.*, 365 U.S. at 187 [81 S. Ct. at 484], they are outside of its ambit for purposes of equitable relief as well as for damages. \* \* \*"

Accordingly, 28 U.S.C. § 1343 and 42 U.S.C. § 1983 will not supply jurisdiction when the municipal corporation is the sole defendant.

This interpretation of § 1983 may have little practical importance, however. Justice Brennan, concurring in *Bruno*, expressed his view that the general federal question statute (§ 1331) would provide jurisdiction over a city in a civil rights action as long as the amount in controversy requirement was satisfied. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); cf. Biv-

---

7. Plaintiff subsequently amended his complaint to add the individual council members as parties defendant.

ens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U. S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■■ In the instant case, as in *Bruno*, it has been alleged but neither stipulated nor affirmatively established that more than $10,000 is in controversy. Defendants' answer put the plaintiff to his proof. Plaintiff has not submitted any evidence in reply, except to indicate in affidavits directed to the restraining order that plaintiff has invested more than $20,000 in improvements to his tavern. Whether this entire amount will be lost with the revocation of the liquor license has not been established. Thus, jurisdiction cannot be based on 28 U.S. C. § 1331. And, jurisdiction must be predicated on § 1343 and § 1983 if it exists at all. The action against the defendant City of Green Bay must, therefore, be dismissed. Whether the action may be maintained against the individual defendant members of the City Council is a question of statutory construction which ultimately turns on the intention of those who passed § 1 of the Klu Klux Klan Act of 1871, now 42 U.S.C. § 1983. According to the Supreme Court's discussion of the legislative history of § 1983 in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the considerations underlying the exemption of municipal corporations appear closely analogous to those underlying the doctrine of sovereign immunity and the eleventh amendment; namely, the fear that damage awards would drain the public treasuries at the expense of the innocent citizenry, and the belief that the federal government lacked constitutional authority to impose liability upon a sovereign state or its creation. It is not surprising then that the fiction adopted in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), to limit the effect of sovereign immunity suggests a similar approach here. Justice Peckham stated the fiction of Ex parte Young as follows:

"The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. * * *" 209 U.S. at 159–160, 28 S. Ct. at 454.

When this reasoning is analogized to the case at hand, the Council members and the city clerk who actually issues or declines to issue the liquor license become distinct from the city itself. Their actions, if they conflict with the superior authority of the Constitution, strip them of their official character and subject them to suit as individuals. Since the city treasury is secure, at least in the absence of the city's consent, and the city's sovereignty is safe from direct federal intrusion, the fiction is kept intact. Therefore, jurisdiction does exist under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 against the individual defendants.

**B.**

■ Plaintiff makes much of the fact that the dress guidelines of the City Council were established in a resolution and not in an ordinance.[8] In view of

8. Plaintiff points out that an ordinance unlike a resolution, must either be approved or vetoed by the mayor. But since the legislature delegated virtually all of its authority

the sweeping authority delegated to the Council under § 176.05(1) to grant licenses to "such persons * * * as they deem proper," and in view of the difficulty they would encounter in anticipating all the acts which might lead them to deny a license, it is not certain that the defendants were obligated to promulgate any guidelines whatsoever. But even assuming that guidelines to limit their discretion were necessary, and this is a reasonable assumption, Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), no reason is suggested for requiring that the guidelines be supplied by an ordinance instead of a resolution. Plaintiff admits that the resolution here provided adequate notice of the conduct proscribed. Though the guidelines did not expressly state that the penalty for violation would be nonrenewal of the liquor license, common sense would indicate that the purpose of the guidelines was to advise the licensees of the Council's policy in making its yearly licensing decisions.

## II.

The merits of this case must be examined in the wake of California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). In *LaRue* the California Department of Alcoholic Beverage Control, an administrative agency vested with power by the California Constitution over the licensing of the sale of alcoholic beverages, promulgated certain standards regulating the type of entertainment that could be presented in licensed bars and night clubs. These regulations, although not expressly prohibiting topless dancing, did prohibit the exposure of any portion of a person's genitals or anus. A three-judge district court was convened to decide the merits of the claim that the regulations were invalid under the Federal Constitution.

over the licensing of taverns to the Common Council alone, participation of the local may-

The three-judge court found that the regulations in question were unconstitutional as they abridged the freedom of expression guaranteed by the first and fourteenth amendments.

■ The Supreme Court reversed, stating that the regulations were to be considered

" * * * not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink. * * * " 409 U. S. at 114, 93 S.Ct. at 395.

The Court took the view that since the twenty-first amendment confers on the states an unusually broad authority over the distribution of liquor, the Department's conclusion that the volatile mixture of naked dancing and entertainment and the sale of liquor by the drink should not be allowed in licensed establishments was not irrational. In so holding, the Court implied that some live entertainment which was not obscene, and hence could not ordinarily be prohibited, could be circumscribed in establishments where liquor is distributed. Mr. Justice Rehnquist stated:

" * * * we do not believe that the state regulatory authority in this case was limited to either dealing with the problem it confronted within the limits of our decisions as to obscenity, or in accordance with the limits prescribed for dealing with some forms of communicative conduct in *O'Brien* [United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)], *supra*." 409 U.S. at 116, 93 S.Ct. at 396.

Apparently then the line between the protected dance and the unprotected can be drawn at a different point when the establishment in question sells liquor by the drink. A tavern owner seeking guidance from the court's opinion in *LaRue* learns only that a performance by a "scantily clad ballet troupe" is still protected, but "bacchanalian revelries"

or in the licensing process is not only unnecessary but inappropriate.

are not. 409 U.S. at 118, 93 S.Ct. 390.[9] Recently, in Richter Associates, Inc., v. California Dept. of Alcoholic Beverage Control, —— U.S. ——, 94 S.Ct. 548, 38 L.Ed.2d 335 (1973), the Supreme Court denied (without opinion) a liquor licensee's writ of mandate challenging a ban on nude dance performances in licensed premises as applied to allegedly nonobscene performances. Hence, *LaRue's* implication that nonobscene performances, ordinarily not to be prohibited, can be barred in establishments where liquor is served is still alive. Assuming that the stiff protection ordinarily afforded dancing is diluted inside the tavern walls, it remains to be determined how the line between the protected and the unprotected in the liquor context is to be drawn. Restated, the issue becomes: what constitutional rights, especially procedural, do tavern owners have in this area?

The importance of procedural rights is undebated, for as Mr. Justice Douglas stated in Wisconsin v. Constantineau, 400 U.S. 433, 436, 91 S.Ct. 507, 509, 27 L.Ed.2d 515 (1971):

"It is significant that most of the provisions of the Bill of Rights are procedural, for it is procedure that marks much of the difference between rule by law and rule by fiat."

In *Constantineau* the Supreme Court found unconstitutional a Wisconsin statute which provided for "posting," without notice or hearing, in places where liquor is sold, the name of any individual who by excessive drinking does certain things or displays specified traits, such as exposing himself or his family "to want" or becoming "dangerous to the peace" of the community. See Wis. Stats. § 176.26 (1967). The Court found that the right to be heard, and notice of this opportunity to be heard, are required where a person's good name,

reputation, honor, or integrity is at stake. 400 U.S. at 437, 91 S.Ct. 507. See also Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1952); United States v. Lovett, 328 U.S. 303, 316–317, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In California v. LaRue, supra, Mr. Justice Rehnquist was quite explicit in stating that his decision

"* * * did not go so far as to hold or say that the Twenty-first Amendment supersedes all other provisions of the United States Constitution in the area of liquor regulations. * * *" 409 U.S. at 115, 93 S.Ct. at 395.

Cited as authority for this was Wisconsin v. Constantineau, supra. In City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), Mr. Justice Rehnquist again implied that there was the possibility of minimal procedural due process rights being extended to the appellee tavern owners. He stated that the district court should have the benefit of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), to determine the claim that fourteenth amendment procedural due process rights were violated when appellees did not receive full-blown adversary hearings before the municipalities refused to renew their one-year liquor licenses.

An examination of *Roth* and *Perry*, supra, and the cases they relied upon is therefore in order. Both *Roth* and *Perry* discuss the nature of "liberty" and "property" that is protected

9. Mr. Justice Rehnquist stated in entirety: "* * * we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of *Bacchan-* *alian* revelries which the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater." 409 U.S. at 118, 93 S.Ct. at 397.

against denial without due process by the fourteenth amendment. One must look not to the "weight" but to the "nature" of the interest at stake to determine if due process requirements apply in the first place. Board of Regents v. Roth, supra, 408 U.S. at 571, 92 S.Ct. 2701. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971). See also Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971), where Mr. Justice Blackmun recently threw more light on this area by stating that

" * * * this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' * * * "

See also Roth, supra, 408 U.S. at 571, n. 9, 92 S.Ct. 2701; Morrissey v. Brewer, supra, 408 U.S. at 482, 92 S.Ct. 2593; Pickering v. Board of Education, 391 U. S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967); Sherbert v. Verner, 374 U. S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1962). Van Alstyne, "The Demise of the Right-Privilege Distinction in Constitutional Law", 81 Harv.L.Rev. 1439 (1968). Whether due process procedural protections are required is dependent on the extent to which a person will be "condemned to suffer grievous loss." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), quoted in Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

I must therefore examine whether or not the nature of the interest allegedly abridged is within the contemplation of the "liberty" or "property" language of the fourteenth amendment. In Board of Regents v. Roth, 408 U.S. 564, 571–572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972), the Court stated:

" 'Liberty' and 'property' are broad and majestic terms. They are among the '[g]reat [constitutional] concepts . . . purposely left to gather meaning from experience. . . . [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged.' National Mutual Ins. Co. v. Tidewater Co., 337 U.S. 582, 646 [69 S.Ct. 1173, 1195, 93 L.Ed. 1556] (Frankfurter, J., dissenting). * * * The Court has also made clear that the property interests protected by procedural due · process extend well beyond actual ownership of real estate, chattels, or money. * * * "

In Roth the Court found that the teacher had not successfully showed either that the decision not to rehire him had somehow deprived him of an interest in "liberty" or that he had a "property" interest in his continued employment. However, in Perry the teacher, by showing from the circumstances of his employment that he was entitled to a type of quasi-tenure, successfully convinced the court that he had been denied a "property" interest.

The instant case is distinguishable from Roth. Mr. Justice Stewart stated in Roth, 408 U.S. at 573–574, 92 S.Ct. at 2707, that:

" * * * there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury * * *.' Joint Anti-Fascist Refugee Committee v. McGrath, supra, 341 U.S. at 185 [71 S.Ct. 624] (Jackson, J., concurring). * * * "

The plaintiff in this case has a substantial property interest in retention of his liquor license, since if the revocation is allowed, he will not only lose his sole

source of income but will also lose a substantial sum of money which he has invested in physical improvements to his business establishment. In this context, loss of the liquor license forecloses the tavern owner's freedom from taking advantage of other similar employment opportunities. This, in effect, is a bar to the plaintiff from all other employment in the tavern business. Wisconsin law dictates that he may not open up another tavern in the vicinity and sell intoxicating liquors, for he must have a liquor license to do so. Wis.Stats. § 176.04 (1971). The Court in *Roth* was swayed by the argument that a person is not deprived of either "liberty" or "property" when he simply is not rehired for one job but remains as free as before to find another elsewhere. Here it is quite clear that the situation is different. When Mr. Manos was denied renewal of his liquor license, he did not remain as free as before to procure another. Rather, assuming that his chosen profession is that of tavernkeeper, Mr. Manos cannot go anywhere in the state to exercise his profession without once again having to submit to the specified procedures for the acquisition of a liquor license.

In addition, it would seem that the tavern owner here is in a similar position to that of the respondent in Perry v. Sindermann, supra. In *Perry* the respondent teacher, Robert Sindermann, persuaded the court that although his appointment was for only one year and his college had no official tenure system, he had an informal expectation (a type of quasi-tenure) and mutual understanding that teachers would be rehired each year if they displayed the ability to successfully perform their teaching duties. 408 U.S. at 600–601, 92 S.Ct. 2694. The plaintiff, likewise, had an expectation that he would be in business for over one year. His investment in his tavern reflects this. Plaintiff, therefore, has shown on several grounds that he has a property interest. As stated in Perry v. Sindermann, supra, at 601, 92 S.Ct. at 2699, " 'property' denotes a broad range

of interests that are secured by 'existing rules or understandings.' " See *Roth*, supra, 408 U.S. at 577, 92 S.Ct. 2701. My findings are two-fold: first, plaintiff has shown a broad range of interests emanating from his investment in the tavern business, which are affected by the City Council's action; and second, in these situations, the existing understanding is such that once a liquor license is granted, the likelihood that it will be renewed is very great. Therefore, under my reading of both Board of Education v. Roth, supra, and Perry v. Sindermann, supra, plaintiff has shown that he had a "property" interest in the renewal of his liquor license.

 A finding of such "property" interest is enough to warrant the guarantee of minimal standards required by procedural due process. What are these minimal standards of procedural due process? In Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287, the Supreme Court held that the minimum procedural safeguards required by due process in each particular situation depend on the type of governmental function involved and the nature of the private interest which is affected by the governmental action. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); Dixon v. Alabama State Board of Education, 294 F.2d 150, 155 (5th Cir. 1961); Escalera v. New York City Housing Authority, 425 F.2d 853, 861 (2nd Cir. 1970). It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

The Supreme Court has indicated how the competing interests herein examined are to be weighed. In so doing, the Court appears to have loaded the scales

inordinately in favor of the governmental function: the regulation of the sale of liquor by the drink. As was stated in California v. LaRue, 409 U.S. 109, at 114, 93 S.Ct. 390, at 395, 34 L.Ed.2d 342 (1972):

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters *traditionally within the scope of the police power,* the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals. In Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 330 [84 S.Ct. 1293, 1297, 12 L.Ed.2d 350] (1964), the Court reaffirmed that by reason of the Twenty-first Amendment 'a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' * * * "

Two questions arise: First, how heavy a weight is this overwhelming state power over the regulation of alcoholic beverages destined for use, distribution, or consumption within the state's borders? Second, how much does the tavern owner have to show is at stake to counterweight the balance *which is already leaning so disproportionately against him?* According to *LaRue,* the state power over the regulation of alcoholic beverages is of impressive magnitude. According to the recent decision of the Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the local municipality or community is to be given precedence when attempting to determine whether certain materials or acts are obscene as a matter of law. The Court stated:

" * * * [P]eople in different States vary in their tastes and atti-

tudes, and this diversity is not to be strangled by the absolutism of imposed uniformity. * * * " *Miller, supra,* at 33, 93 S.Ct. at 2620.

It would seem that by adding the inordinate state power over the regulation of liquor to the newfound concern for local community standards, one would be obliged to conclude that the applicable licensing body can summarily revoke liquor licenses without respecting several minimal procedural requirements. This is not so. I am not persuaded that the local regulation of distribution of liquor by the drink is either an area for summary administrative action or an area so inherently discretionary that some form of hearing would interfere with this discretion. I further believe that society and the local citizenry have a basic interest in the regularity and fairness of local administrative proceedings. Society has an interest in insuring that liquor licenses are not revoked for reasons not made known to the parties involved, or on the basis of erroneous information. Confidence in local government is so important in a democracy that I do not think it unduly harsh to require local licensing bodies in these matters to respect the minimal dictates of procedural due process.

■ Returning, therefore, to the question of what interests of the plaintiff are at stake and what he must show to counterweight the interest of the municipality in these matters, I rely on my previous discussion of his "property" interests. Such "property" interest as I found is not enough to entitle plaintiff to a renewal of his liquor license. Perry v. Sindermann, 408 U.S. 593, 603, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972). Such interest is enough, when coupled with society's interest, to entitle the plaintiff to the minimal standards of procedural due process. What are these minimal standards and did the City of Green Bay satisfy these standards in the quasi-judicial hearing which was afforded the plaintiff?

This court, sitting as a three-judge panel,[10] has previously defined the framework of the hearing which is to be afforded tavern owners in similar cases involving revocation of liquor licenses. In Misurelli v. City of Racine, 346 F. Supp. 43, 47, 49–50 (D.C., 1972), overruled on other grounds in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), we specified the following minimal requirements: the municipality must provide the tavern owner or licensee with (1) notice of the charges upon which denial of the liquor license is predicated, (2) an opportunity to respond to and challenge such charges, (3) an opportunity to present witnesses under oath, (4) an opportunity to confront and cross-examine opposing witnesses under oath, and (5) the opportunity to have a verbatim, written transcript made upon his own initiative and expense. In addition, the conclusions made by the hearing body must be based on the evidence adduced at the hearing.

After having examined both the notice of the charges upon which denial of the liquor license was to have been based before I issued the temporary restraining order, and the written transcript of the quasi-judicial hearing held on July 18, 1972, before the Common Council of the City of Green Bay, I conclude that the minimal standards of procedural due process were satisfied by the defendants. The plaintiff received notice of the hearing [11] and the charges to be made against him. He exercised his opportunity to respond to those charges. He was given the opportunity to present witnesses on his behalf. He was given the opportunity to confront and cross-examine opposing witnesses under oath, and he availed himself of the right to have a verbatim transcript made of the proceedings. Finally, the conclusions of the councilmen were based on evidence brought out at the hearing. Thus, I find no constitutional defect in the proceedings afforded plaintiff by the defendant city councilmen of the City of Green Bay.

For the reasons stated above,

It is therefore ordered that the plaintiff's motion for summary judgment be and it hereby is denied.

It is further ordered that the defendants' motion for summary judgment be and it hereby is granted.

---

10. The three-judge court consisted of Hon. Thomas E. Fairchild, Circuit Judge; Hon. John W. Reynolds, District Judge; and Hon. Myron L. Gordon, District Judge.

11. See n. 6, supra.