**Walter Thomas PAGE**

v.

**Maynard JACKSON, Individually and in his capacity as Mayor of Atlanta, et al.**

**Civ. A. No. 75–1426.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 29, 1975.

Robert A. Elsner, Scheer & Elsner, Atlanta, Ga., for plaintiff.

Thomas F. Choyce, Henry L. Bowden, Atlanta, Ga., for defendants.

## ORDER

FREEMAN, District Judge.

This is an action for equitable relief and money damages regarding revocation of plaintiff's liquor license. The action is brought pursuant to 42 U.S.C. § 1983 and jurisdiction is alleged under 28 U.S.C. § 1343. On July 23, 1975, the

court conducted a hearing on plaintiff's request for a temporary restraining order; however, a ruling on the request for temporary injunctive relief was deferred, pending the filing of briefs on several critical points of law. Thereafter, on July 25, 1975, following submission of the supplemental briefs, the parties expressed their legal arguments at another hearing, at which time they were also given an opportunity to introduce relevant factual evidence. In light of the parties willingness to stipulate many of the relevant facts, it appears that the essence of this dispute concerns the legal effect of these facts. Review of these matters has convinced the court that plaintiff has shown no likelihood of prevailing on the merits and hence is not entitled to preliminary injunctive relief.

Before proceeding to the merits of the instant motion, some review of several basic constitutional and jurisdictional matters is warranted; for, as the Supreme Court has recently indicated in a similar case, a district court has some obligation to inquire into its jurisdiction to resolve constitutional claims, even in the absence of an appropriate motion by the defendants. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). In *Bruno*, the Court ruled that a municipal corporation was not a person within the meaning of § 1983, and remanded for a determination of whether jurisdiction might be proper under other mandates. The *Bruno* case controls this action insofar as plaintiff seeks relief from the City of Atlanta; therefore the City of Atlanta is hereby ordered to be dismissed as a party defendant in this action. On the other hand, well-settled case authority compels a finding that jurisdiction is appropriate under § 1983 over the other named individual defendants in this action. *E. g., Cason v. City of Jacksonville,*

497 F.2d 949 (5th Cir. 1974); *Manos v. City of Green Bay*, 372 F.Supp. 40 (E.D.Wis.1974) (a sequel to *Bruno*). Thus, it is appropriate to turn to the merits of the instant motion for injunctive relief.

As noted above, the salient facts are not in dispute. It appears from the record and certain oral stipulations of the parties that plaintiff was issued a liquor license by the City of Atlanta authorities sometime in the Spring of 1975. Such licenses automatically terminate on December 31 of the year of issuance. Atlanta Municipal Code, Ch. 17, App. I § 18. Under Georgia law, obtaining a municipal license is a prerequisite to obtaining a state liquor license. *See* Ga. Code Ann. § 58–1001 *et seq.* Moreover, at any time following the issuance of a license, it may be revoked for good cause, following notice and a hearing. Atlanta Municipal Code § 5–48. In the instant case, plaintiff's license was revoked on July 18, 1975, on account of a false statement on plaintiff's license application form.[1] The statement in question was a negative answer to a question inquiring whether plaintiff had ever held a liquor license which had been suspended. In fact, pursuant to the oral stipulation of plaintiff's attorney at the July 25, 1975 hearing, plaintiff had held a liquor license which had been suspended by the City of Hapeville, Georgia, approximately three years ago. More recently, plaintiff's Hapeville liquor license has been revoked, and this revocation has been affirmed by the Georgia courts. *See Page v. City of Hapeville*, 132 Ga.App. 369, 208 S.E.2d 142 (1974). Questions regarding revocation of this license are also pending in this court. *Page v. Coggin*, Civil Action No. 75–197 (N.D.Ga. June 6, 1975). Thus, there is no dispute in this action regarding the sufficiency of the reasons for revocation of plaintiff's Atlanta license.[2] *See* At-

---

1. A statement of the reasons for the revocation decision has not yet been made part of the record; however plaintiff does not contend that the license in issue was re-

voked for any reason other than the false statement charge.

2. Originally, the court erroneously concluded that plaintiff contended his Atlanta license

lanta Municipal Code § 5-52 (false statement as cause for revocation).

■ The gravaman of the instant complaint concerns plaintiff's arguments regarding violation of his due process rights. Plaintiff contends that the notice he received from defendants was insufficient to apprise him of the charge forming the basis for the revocation proceeding, and that the proceeding itself was conducted in an unduly prejudicial manner in that defendants heard evidence wholly irrelevant and unrelated to the stated charge. The evidence in question concerned several criminal charges allegedly pending against plaintiff at the time of the revocation hearing. Although consideration of such matters may have been unnecessary and inappropriate, plaintiff has not introduced evidence to show that consideration of this allegedly irrelevant material so prejudiced his case as to deprive him of a fair hearing or an opportunity to present evidence in defense of the false statement charge under consideration. Moreover, there is no indication in the record that plaintiff was deprived of an opportunity to rebut the additional charges or contest the truthfulness of this additional evidence. Thus, plaintiff does not contend that he was denied an adequate opportunity to vindicate his "liberty" interest,[3] if that interest had ever been initially infringed; nor does he contend that the ruling of the review board was incorrect, unsupported by the evidence, or otherwise improper. *See Blunt v. Marion County School Board,* 515 F.2d 951 (5th Cir. 1975). Finally, as noted above, it is undisputed that plaintiff's Hapeville license was suspended, but that plaintiff did not list this suspension on the license application form. Under these circumstances, further consideration of the sufficiency of the license review board hearing is not warranted. *Cf. Brubaker v. Board of Education,* 502 F.2d 973 (7th Cir. 1974). The question for the court in ruling on the plaintiff's request for injunctive relief is thus twofold: (1) Did plaintiff have a cognizable property interest warranting due process protection; and (2), if so, were the procedures utilized adequate to comport with minimal due process considerations. Both of these questions must be answered in the affirmative.

■ In a supplemental brief submitted pursuant to oral directions of the court, defendants argue that under Georgia law, a liquor license is a mere privilege unprotected by due process considerations:

> The sale of intoxicating liquors, except as to domestic wines under a permit, is purely a privilege and not a right, and a license for such sale may be revoked by the governing authori-

---

was revoked because he failed to list the prior revocation of his Hapeville license on the application form. The form in question only requests information regarding suspensions of liquor licenses, and defendants in effect concede that failure to list a prior license revocation would not be a false statement justifying revocation of a current license. Because it is undisputed that plaintiff's Hapeville license had been previously suspended as well as permanently revoked, further consideration of possible ambiguity in the Atlanta license application form is not warranted.

3. An opportunity to vindicate a liberty interest is one of the basic entitlements provided by the due process clause:

A liberty interest arises . . . when one is publicly subjected to a badge of in-

famy, such as being "posted" as a drunkard. [*Wisconsin v. Constantineau,* 400 U.S. 433 [91 S.Ct. 507, 27 L.Ed.2d 515] (1971)]. . . . [I]t arises when an employee is able to demonstrate that the State has made a charge "that might seriously damage his standing and associations in his community" or that is of such a nature as to impose "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Such a showing is the employee's voucher of admission to the arena of procedural due process; without it such questions do not arise. Moreover to raise a liberty interest such charges must be public ones. . . .

*Kaprelian v. Texas Woman's University,* 509 F.2d 133, 137 (5th Cir. 1975).

ties issuing the same without cause or opportunity for a hearing.

*Highnote v. Jones*, 198 Ga. 56, 31 S.E.2d 13 (1944). In the opinion of this court, this statement is largely an anachronism, at least insofar as it bases entitlement to constitutional rights on the outmoded "right-privilege" analysis; however it continues to have some vitality in the Georgia courts in cases dealing with issuance or renewal of liquor licenses. *E. g., Massell v. Leathers*, 229 Ga. 503, 192 S.E.2d 379 (1972), *app. dismissed*, 411 U.S. 911, 93 S.Ct. 1542, 36 L.Ed.2d 303 (1973); *Goldberg v. Mulherin*, 226 Ga. 785, 177 S.E.2d 667 (1970); *Allen v. Carter*, 226 Ga. 727, 177 S.E.2d 245 (1970); Ga. Code Ann. § 58–1068. Classification of a liquor license as a privilege has been recently reaffirmed by the Georgia Legislature, which, in providing for temporary license extensions following the automatic expiration of permanent licenses, added the caveat that "[n]o right or property shall vest in any applicant by virtue of the issuance of such permit." Ga.Code Ann. § 58–1038.2 (Supp. 1974). Irrespective of the continuing vitality of the "right-privilege" approach in judging the sufficiency of a person's entitlement to issuance or renewal of a liquor license, this court doubts that the Georgia courts would continue to adhere to this distinction in judging the sufficiency of a license revocation proceeding. *Cf. Page v. City of Hapeville, supra.*

The traditional approach to liquor license questions in Georgia was significantly altered by the seminal case of *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964); and both parties have asserted vigorous arguments with respect to their views concerning the continuing vitality of this case. On review of these arguments, and the relevant case authority, this court has concluded that the *Hornsby* ruling, like the rulings predicated upon the outmoded "right-privilege" approach, has been significantly eroded by more recent decisions dealing with the authority of the states to adopt regulations in the area of the public welfare and employment. *E. g., California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). On the other hand, this court has also concluded that the continuing vitality of the *Hornsby* opinion is in effect irrelevant to the question presented in the instant action, which concerns revocation of a license rather than renewal or issuance of the license in the first instance.

Relying on the Georgia courts' characterization of a liquor license as a mere privilege and upon the Supreme Court's rulings in *Perry v. Sinderman, supra* and *Board of Regents v. Roth, supra,* defendants contend that plaintiff has an insufficient property interest in his liquor license to warrant due process protection. *Sinderman* and *Roth* are the leading cases discussing the types of property and liberty interests entitled to due process protection. As noted above, questions regarding deprivation of plaintiff's liberty interest are not before the court. With respect to property interests, the *Roth* Court held as follows:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*, 408 U.S. at 577, 92 S.Ct. at 2709. Thus, as amplified by more recent cases, the determination of whether an interest is "property" entitled to due process protection or a mere expectancy is made by reference to the sufficiency of the interest under state law. *E. g., Roane v. Callisburg Independent School District*, 511 F.2d 633 (5th Cir. 1975); *Miller v. Carter*, Civil Action No. 74–653 (N.D. Ga. Aug. 16, 1974). Conversely, *Roth*

and *Sinderman* do not stand for the proposition that a federal court's inquiry regarding the sufficiency of an asserted property interest should end with consideration of the state's formalized characterization of the interest as a mere privilege. On the contrary, in *Roth*, the Court reiterated its rejection of the right-privilege distinction, noting that "the Court has eschewed rigid or formalistic limitations on the protection of procedural due process . . . ." *Id.*, 408 U.S. at 572, 92 S.Ct. at 2706. This conclusion is supported by the actual results in *Roth* and *Sinderman*, in that the disposition of those cases did not turn on the question of whether the teachers were formally tenured or nontenured, but rather upon the sufficiency of their expectancy in continued employment. In *Roth*, where the provisions of the employment contract provided that it would automatically terminate at the end of the school year, with no provision for renewal, the Court concluded that the contract "supported absolutely no possible claim of entitlement to re-employment" and hence to a property interest sufficient to warrant due process protection. *Id.*, 408 U.S. at 578, 92 S.Ct. at 2710. By comparison, in *Sinderman*, in the absence of a formal tenure arrangement, the Court concluded that there was a sufficiently binding "understanding" between the teachers and the university to create a "de facto tenure program" which conferred a sufficient property interest on the plaintiff to warrant due process protection. Thus, the proper approach in such cases involves, as stated in the above-quoted portion of the *Roth* opinion, consideration of the actual "rules or understandings that secure certain benefits" rather than merely considering the formal label attached to the particular benefit.

Of course, as this court held in *Eley v. Morris*, 390 F.Supp. 913 (N.D.Ga. 1975), the public employment-teacher dismissal cases are somewhat sui generis; therefore the principles of those cases may not be strictly applicable in cases dealing with state liquor regulations. *But see Manos v. City of Green Bay, supra,* (recognizing due process rights with respect to renewal of a liquor license). In fact, the federal courts are generally reluctant to interfere with state authority in this area, as evidenced by opinions recognizing the importance of a state's regulation of the public welfare, *California v. LaRue, supra;* or recognizing the res judicata effects of state court rulings on liquor license matters. *E. g., Francisco Enterprises, Inc. v. Kirby,* 482 F.2d 481 (9th Cir. 1973), *accord, Wright v. Blackmon,* Civil Action No. 74–232 (N.D.Ga. April 12, 1974). On the other hand, in the area of license revocations, the seminal case of *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) remains largely undisturbed by the recent developments and stands for the proposition that licenses may not be revoked during the period of their effectiveness without some rudimentary due process protections. In fact, in the leading teacher dismissal cases the Supreme Court has indicated that the termination of a teacher's employment during the school year must be accompanied by due process protections irrespective of that teacher's entitlement to continued employment the following year: "[C]ollege professors and staff members dismissed during the terms of their contracts, *Wieman v. Updegraff,* 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed. 216] have interests in continued employment that are safeguarded by due process." *Board of Regents v. Roth, supra,* 408 U.S. at 576–77, 92 S.Ct. at 2709. *See Connell v. Higginbotham,* 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); *Roane v. Collisburg Independent School District, supra.* As a result, irrespective of the formal characterization of a Georgia liquor license as a mere privilege, this court has concluded that a license holder has a sufficient property interest in holding the license to the date of its automatic termination that the revocation of that license must be accompanied by rudi-

mentary due process protections. *Accord Page v. Coggin, supra.*[4]

The question remaining is whether or not the due process protections afforded in this case were sufficient. If a licensee should be afforded the same protections apparently mandated on the termination of a public employee's property interest in continued employment, *see Ferguson ·v. Thomas,* 430 F.2d 852, 856 (5th Cir. 1970), then the notice received in the instant case is insufficient in failing to provide plaintiff with a list of witnesses and some information concerning the nature of the testimony against him. On the other hand, it is a well-settled principle of constitutional adjudication that the extent of due process protections which should be afforded in a particular instance varies with the importance of the interest to be protected, as compared with the interest of the state in protecting the public welfare from abuse of this interest. *E. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Eley v. Morris, supra.* On balancing the respective interests in this action, and considering the inherent authority of the state in the area of liquor regulations, *California v. LaRue, supra,* this court has concluded that procedures which provide for a revocation hearing, preceded by advance notice setting forth the charge forming the basis for the revocation, are sufficient to adequately comport with due process mandates. In this case, plaintiff was informed in advance of the pending revocation of his license; plaintiff was informed of the reasons for that revocation; a hearing was held; plaintiff was represented at that hearing by counsel; and plaintiff had an opportunity to present evidence in his behalf or to object to erroneous or prejudicial evidence submitted against

him. Arguably, better practice would have required the notice of the charge to specifically set forth the alleged false statement, and arguably better practice should limit the matters considered at the hearing to those which are relevant to the listed charge. Under the circumstances of this case, these defects in the procedures afforded, if any, do not rise to the level of a constitutional violation. Plaintiff's arguments to the contrary are without merit; therefore, at this stage in the proceeding, plaintiff has shown no likelihood of ultimate success on the merits of his claims.

Accordingly, for the reasons hereinabove expressed, plaintiff's request for preliminary injunctive relief is hereby denied. *See The Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974) (preliminary injunction is an extraordinary remedy which should not be granted unless the movant clearly carries the burden of persuasion).

---

4. In this case, Judge Moye concluded that the license holder's investment in a lease, renovation of his business establishment, and weekly receipts and disbursements constituted factors supporting the plaintiff's property interest in his license. These factors, while significant in terms of recognizing a licensee's "defacto property interest" in license renewal, *see Manos v. City of Green Bay, supra,* are merely cumulative considerations in cases dealing with license revocations.