George BARRETTE, Plaintiff,

v.

CITY OF MARINETTE, a Wisconsin Municipal Corporation, et al., Defendants.

No. 77–C–433.

United States District Court, E. D. Wisconsin.

Sept. 7, 1977.

Alexander R. Grant, of Cohen, Grant, Zuidmulder, Naze & Gazeley, Green Bay, Wis., for plaintiff.

F. H. Jabas, City Atty., Topel, Jabas & Faller, Marinette, Wis., for defendants.

MYRON L. GORDON, District Judge.

DECISION and ORDER

On July 22, 1977, I granted the plaintiff's motion for a preliminary injunction. That order also provided that I would reconsider the continuance of the preliminary injunction upon receipt of briefs from the parties,

pursuant to a briefing schedule set forth in the order. Briefs have been submitted by the parties, and the question of whether the preliminary injunction should continue is now before me.

## JURISDICTION

In the July 22, 1977, ruling, it was found that 28 U.S.C. § 1343 and 42 U.S.C. § 1983 confer subject matter jurisdiction over the individual members of the licensing committee of the common council for the city of Marinette. As to the defendant city, it was determined that federal question jurisdiction could be acquired pursuant to 28 U.S.C. § 1331, although some doubt was expressed whether the plaintiff had shown the requisite amount in controversy of $10,000. Such doubt arose from the plaintiff's attempt to establish the amount in controversy by merely enumerating the sums spent in improving the tavern, rather than addressing the value to the plaintiff of the liquor license upon which this controversy is based.

The plaintiff now stresses that the $10,-000 amount in controversy is established by his claim that the loss of his liquor license will result in lost profits and "accumulated good will." The defendant points out that it is not possible to sell a city of Marinette liquor license separately from the licensed establishment, and thus the license has no stated value.

In my opinion, the value of the liquor license should be determined by appraising its value from the perspective of the plaintiff. The loss of the license means the loss of the profits which the plaintiff can earn as a tavern operator during the term of the license and the loss in value of the plaintiff's business as a going concern. The defendants' assertion that the plaintiff can recover his tavern investment by beginning a new commercial venture at the same location is unimpressive and does not obviate the plaintiff's good faith allegation that the amount in controversy exceeds $10,000 exclusive of interest and costs. I am not convinced by the defendants' arguments that it "appears to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). I therefore decline to alter my earlier determination that 28 U.S.C. § 1331 confers subject matter jurisdiction over the city.

The defendants also assert that jurisdiction cannot be obtained over the individual council members because it has not been shown that they violated the fourteenth amendment. This jurisdictional claim is also based on the defendants' argument that they were acting in their official capacities and "did not act under color of an invalid ordinance." The plaintiff is correct in responding that a simple denial of the complaint's allegations does not deprive the court of subject matter jurisdiction. Accordingly, I find that the court has jurisdiction over this action.

## CONTINUANCE OF THE PRELIMINARY INJUNCTION

In the July 22, 1977, decision and order, I found that the plaintiff had established probable success on the merits of showing that the following minimum due process requirements set forth in *Manos v. City of Green Bay*, 372 F.Supp. 40, 51 (E.D.Wis. 1974), had not been met:

" . . . the municipality must provide the tavern owner or licensee with (1) notice of the charges upon which denial of the liquor license is predicated, (2) an opportunity to respond to and challenge such charges, (3) an opportunity to present witnesses under oath, (4) an opportunity to confront and cross-examine opposing witnesses under oath, and (5) the opportunity to have a verbatim, written transcript made upon his own initiative and expense. In addition, the conclusions made by the hearing body must be based on the evidence adduced at the hearing."

The granting of the preliminary injunction was bottomed largely upon the unopposed affidavits of the plaintiff. Based upon the present record, I now believe that the pros-

pect of the plaintiff succeeding on the merits is not so probable as to permit the continuance of the preliminary injunction.

The following are the pertinent facts taken from the affidavits now on record: On May 31, 1977, the Marinette personnel and license committee (the committee) reviewed a petition objecting to the plaintiff's application for a renewal of his class "B" liquor license. The license committee decided to notify the plaintiff by letter that it was the decision of the committee to recommend that the city of Marinette common council deny the plaintiff's application based on "the systematic and continuing disorderly conduct" of the patrons of the plaintiff's tavern. The letter was sent to the plaintiff on June 2, 1977, but he claims that he never received the letter and found out about the committee's actions from a friend.

The plaintiff retained attorney James E. Murphy, who got in touch with the Marinette city attorney and discussed the complaint of the neighbors and the general conduct of business at the tavern. Both agreed that the license could not be denied without a hearing. Mr. Murphy formally requested a hearing by letter dated June 7, 1977. In Mr. Murphy's letter, which both parties have submitted as an exhibit, he refers to the contents of the June 2 letter that he claims his client never received. At a common council meeting held on June 8, 1977, the common council chairman informed Mr. Murphy that his letter had been received and that a hearing was scheduled for June 16, 1977. Formal notice of the hearing was sent to the plaintiff and to all property owners in the neighborhood of the tavern.

On June 16, 1977, a public hearing was held, with the plaintiff and Mr. Murphy in attendance. The complaining witnesses were told to identify themselves, to state their complaints and objections to the license renewal, and that Mr. Murphy would then have the opportunity to question them. Mr. Murphy then stated that he was not there to conduct a trial or to argue with or cross-examine witnesses. Mr. Murphy also stated that he knew that most of the complaints were justified. Neither the plaintiff nor Mr. Murphy asked to have a transcript made although a city clerk having stenographic capability was present.

Complaints and objections were made by various witnesses. The plaintiff then gave an explanation as to why such disturbances had occurred and proposed a compromise whereby the plaintiff would be given a six month probationary license to show that the tavern could be run in an orderly manner. On the mayor's motion, the hearing was adjourned until June 22, 1977.

On June 22, 1977, the hearing was reconvened with Mr. Murphy in attendance. The chairman of the license committee read a report prepared by the city police department containing a recommendation against renewal of the license. In response to Mr. Murphy's questioning, the chairman stated that the report was actually based on a verbal report of the police chief. Mr. Murphy did not request an opportunity to question the police chief. The council members then voted to deny the renewal of the plaintiff's license, each member specifying the reasons for his vote.

█ On the basis of the record now before me, it appears that the *Manos* requirements for due process at liquor license renewal hearings were met.

Although the plaintiff asserts that he did not receive the notice letter of June 2, it is clear that by June 7, the plaintiff had notice of the license committee's recommendation against license renewal and was aware of the charges upon which the proposed denial was predicated. By that date, the plaintiff had retained Mr. Murphy, Mr. Murphy had discussed the charges of disorderly conduct with the Marinette city attorney, and Mr. Murphy had requested a hearing by a letter in which reference is made to the missing June 2 letter. Moreover, on June 9, the city clerk sent the plaintiff a written notice of the June 16 hearing. Thus, I believe that it is probable that the requirement of notice was adequately met.

It is undisputed that a hearing on the question of whether the plaintiff's license

should be renewed was held on June 16 and continued on June 22. The notice of the hearing, the minutes of the June 16 meeting and the other statements in the affidavits submitted by both parties leave no doubt that the plaintiff had the opportunity to answer and to challenge the charges upon which the nonrenewal was predicated.

It is also likely that the hearing procedure contemplated the plaintiff's having the opportunity both to cross-examine the complainants and to present his own witnesses under oath. It appears that the plaintiff made a tactical decision to assume a conciliatory posture at the hearing by pledging an end to the disruptive conduct in the future, and decided not to refute the charges brought by the complainants.

It also appears that the plaintiff did not seek to have a written transcript of the hearing made. Pursuant to *Manos*, the plaintiff must seek a transcript on his own initiative and at his own expense. The city of Marinette made available a clerk with stenographic abilities and was required to do no more.

Finally, the present record strongly suggests that the council members arrived at their decision to deny the plaintiff's renewal application based on the evidence submitted at the hearing. Each council member stated the reason for his vote upon the record, and the plaintiff has not pointed to any who based his decision on matters outside of the hearing.

The plaintiff also urges that his "substantive due process" argument, that the city of Marinette municipal ordinance 25.07(d) is unconstitutional, provides a basis upon which to continue the preliminary injunction. The July 22 decision and order granting the preliminary injunction did not rest upon the plaintiff's substantive due process argument, although the argument was advanced in the plaintiff's brief in support of the injunction.

The defendant contends that the ordinance was not utilized by the common council in arriving at their decision. According to the defendant's affidavit, the city attorney advised the common council that the ordinance might be constitutionally defective and that a denial of the plaintiff's license should be based instead upon a procedure that was not "arbitrary or capricious." To accomplish this, the common council employed the procedure described above. As indicated previously, I believe that the procedure utilized satisfied the *Manos* requirements. Accordingly, the preliminary injunction will be vacated.

Therefore, IT IS ORDERED that the preliminary injunction granted on July 22, 1977, be and hereby is vacated.