Yvonne Gwendolyn CASON, Individually
and on behalf of all others similarly
situated, Plaintiff-Appellee,

v.

**CITY OF JACKSONVILLE et al.,**
**Defendants-Appellants.**

No. 73–3102.

United States Court of Appeals,
Fifth Circuit.

July 26, 1974.

J. B. Stoner, Marietta, Ga., for W. Eugene Wilson.

Ralph W. Nimmons, Jr., Frederick J. Simpson, Asst. Gen. Counsel, Jacksonville, Fla., for City of Jacksonville.

William J. Gibbons, Deitra Micks, Lawrence J. Figur, Steven Mark Goldstein, Jacksonville, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The District Court entered a preliminary injunction prohibiting the City of Jacksonville from permitting the National State's Rights Party (NSRP)—a lily-white group—from using the Little Theatre of the City's Civic Auditorium for its annual convention "so long as [the] Party's membership policies discriminate on the basis of race or color." The City and NSRP each appeal. The case, simple enough to state, presents awesome problems as First and Fourteenth Amendment rights collide. We vacate and remand to the District Court with directions to (i) dismiss the City of Jacksonville as a defendant for lack of jurisdiction, (ii) allow Appellee to amend her complaint to name the appropriate City officials over whom jurisdiction would exist under 42 U.S.C.A. § 1983 and (iii) to determine and then enter specific findings of fact as to whether the meeting in issue was intended to be a purely private meeting or one open to the public at large.

The City leases the Theatre on a first come first served basis to all applicants. The City entered into an agreement to lease the Theatre to NSRP for the Party's annual convention scheduled for June 23, 1973.

Appellee Cason brought this class action on behalf of black taxpaying citizens of Jacksonville who desired to attend the National State's Rights Party's meeting against the City of Jacksonville and J. M. Johns, as representative of the Party [1] alleging that she would be denied access to the meeting in the public building on account of her race and would therefore be deprived of her right to equal protection of the laws guaranteed by the Fourteenth Amendment. She requested either that she and all members of the public be allowed to attend the Party meeting and that the City provide necessary law enforcement officers to ensure the public safety or alternatively that the City be enjoined from leasing the Theatre to NSRP.

A hearing on the preliminary injunction was held the day before the meeting was scheduled. It was stipulated that NSRP, "is a self-procliamed white racist Christian organization",[2] bars blacks from becoming members, the scheduled meeting would be open only to NSRP members and invited guests, invited guests are individuals who have been invited through the "Thunderbolt" (a party publication distributed by mail) and invited guests would not vote at the meeting.

Without reaching the First Amendment issues raised by NSRP, the Dis-

---

1. The signer and negotiator of the lease on the Party's behalf.

2. The NSRP membership application espouses both its political character and its beliefs:

   The National States Rights Party is by far the largest White Racist political Party in America. Both Democratic and Republican Parties have betrayed the White People of America. The NSRP is the last hope of the Whiteman to save our White Christian Civilization.

   The NSRP is the only political Party vigorously defending White Rights throughout America today. Gain the personal satisfaction of knowing that you are doing your part to bring about a better society in which to live.

   Compare our Party Platform with that of the left-wing Democratic and Republican Parties. Only within our ranks can you find the full answer to the grave problems facing the United States.

   Join the National States Rights Party and become an active part of the dynamic crusade to save our Race and Nation. Simply fill out the application blank below.

trict Court enjoined the City from permitting NSRP to use the Little Theatre on the grounds that in view of the Party's discriminatory membership policies, such use would violate the equal protection clause of the Fourteenth Amendment and the 1960 permanent injunction entered against the City in Hampton v. City of Jacksonville, No. 4368–Civ–J, December 7, 1960, prohibiting the City from operating or leasing public recreational facilities on a discriminatory basis.[3]

Before getting to our disposition on the merits we must, as often, face a jurisdictional problem. In Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, the Court held that the District Court did not have jurisdiction over a § 1983 damage claim against the City of Chicago since a City is not a person within the meaning of § 1983.[4]

In Harkless v. Sweeny Independent School District, 5 Cir., 1970, 427 F.2d 319 we distinguished *Monroe* and held that a "municipality"—in that case a school

district—was a "person" within § 1983 for the purpose of equitable relief. In justifiable reliance on *Harkless*, Appellee Cason based her claim for relief and jurisdiction on §§ 1983 and 1343(3)[5] and named as defendant the City of Jacksonville rather than any of the appropriate individual City officials. Subsequent to the issuance of the preliminary injunction but prior to oral argument the Supreme Court in City of Kenosha v. Bruno, 1973, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 rejected the *Harkless* distinction and held that a municipality is not a person within § 1983 whether for damages or equitable relief and therefore a federal District Court does not have jurisdiction to enjoin a city pursuant to § 1983.

Since the injunction in issue runs against the City proper we must vacate for lack of jurisdiction. Even in the wake of *Kenosha* it is of course clear that appropriate individual city officials are persons within § 1983 and may properly be named as defendants.[6] United

---

3. The Court observed that the City had complied with paragraph 8 of the *Hampton* order which required the City to inform all lessees of the injunction and its requirements. The City had inserted the following paragraph into its lease with NSRP:

"20. The City is required by Judgment of the United States District Court for the Southern District of Florida, Jacksonville Division, to operate its Jacksonville Veterans Memorial Coliseum, Exhibition Hall, Auditorium and Theatre without discrimination of any kind based on race or color and Lessee must comply therewith."

Furthermore, in a letter to the City Director of Community Relations (which was made available to NSRP) the General Counsel for the City stated that he was of the opinion that the City could lease the Theatre to NSRP without violating the *Hampton* injunction so long as the meeting from which blacks would necessarily be excluded would not be open to the public at large.

The District Court determined that NSRP's membership policies reflected a purpose on its part not to comply with the *Hampton* injunction.

4. 42 U.S.C.A. § 1983
   *Civil action for deprivation of rights*
   Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
R.S. § 1979.

5. *§ 1343. Civil rights and elective franchise*
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   . . . . .

   color of any State law, statute, ordinance,
   (3) To redress the deprivation, under regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

6. Since there is undeniable state action in the City's ownership and leasing of the Theatre, there is no need to equate NSRP with the state for state action purposes even though as a political party constituting a part of the electoral process state status might be attributed to it. See Terry v. Adams, 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.

Farm Workers of Florida Housing Project, Inc. v. City of Delray Beach, 5 Cir., 1974, 493 F.2d 799. Considering the posture in which the jurisdictional issue was injected into this litigation and the fact that we deem it proper to vacate and remand to the District Court for further evidence and findings, it is likewise appropriate that the District Court allow Appellee Cason to substitute the appropriate municipal officials charged with executing the duties under attack.

On the merits the case is one, or at any rate close to one, of noble principles on a collision course. See 33 U.S. C.A. §§ 146(2), 201, 341a. NSRP girds its loins with the First Amendment and its guaranteed right of freedom of association and expression of ideas—those palatable as well as obnoxious. Cason, for the class of black citizens taking as

Buckler and Shield the equal protection clause of the Fourteenth Amendment, claims that permission by the state for use of public facilities by a particular race or sect and the exclusion of others for reasons of race, or color, is a denial of that right.[7] The City, caught in the middle, presumably takes a middle ground that mandated state-action-equal-protection does not compel overriding free assembly rights of others.

In the arguments before us each undertakes to find the answer to this constitutional riddle in two cases.[8]

The closest in factual setting is the en banc decision of the Fourth Circuit in National Socialist White People's Party v. Ringers, 1973, 473 F.2d 1010 (en banc).[9] The second, closer to home but further removed in fact, is ours in Gilmore v. City of Montgomery, 5 Cir., 1973, 473 F.2d 832 [10] and, since that

Ed. 1152; Smith v. Allwright, 1944, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; Nixon v. Condon, 1932, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984. Of course, Johns is a person within § 1983 and this Court obviously has appellate jurisdiction over the appeal as between him and Cason.

7. She also contends that this violates the public accommodation provisions of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000a and the Hampton injunction (see note 3, supra.).

8. We do not regard the validity or interpretation of Hampton (note 3, supra) to be in any wise drawn into question.

9. In Ringers the Fourth Circuit held that the First and Fourteenth Amendments prohibited a local school board from denying the National Socialist White People's Party the use of a school auditorium, which had in effect been dedicated to the public as a forum for the exercise of First Amendment rights, on the basis of the Party's racially discriminatory membership policies. The Court held that the state action doctrine of the Fourteenth Amendment equal protection cannot be applied to restrict legitimate First Amendment rights of expression. It summed up its holdings:

"Since the first amendment prohibits the state from interfering with the expression of unpopular, indeed offensive, views, and with assembly and association for the purpose of exchanging and furthering them, we think that the first amendment pro-

tects the expression of such views in those public places dedicated to the exercise of first amendment rights by groups which implement them by restrictive membership policies. We therefore, conclude that the School Board's denial of the use of a public forum because of the Party's discriminatory membership policies constitutes as much of an invalid prior restraint as if it had denied the Party the use of the forum on the basis of the controversial beliefs which the Party would express at that place.
"The Party's discriminatory membership policy does not bring into play the state action doctrine of the equal protection clause of the fourteenth amendment." 473 F.2d at 1016.

10. In Gilmore this Court affirmed a District Court order enjoining officials of the City of Montgomery from permitting private segregated schools from using public recreational facilities on an exclusive basis (i. e., leasing a public football stadium to a segregated school) on the grounds that such practice supports the maintenance of the segregated schools thereby undermining a Court ordered desegregation plan. However, the Court vacated a portion of the injunction which prohibited the City from permitting segregated schools from using public recreational facilities on a non-exclusive basis (i. e., field trip to the zoo).
Of more importance to our case, the Court vacated that portion of the injunction which prohibited the City from permitting private

time, the Supreme Court's action on certiorari, 1974, —— U.S. ——, 94 S.Ct. 2416, 40 L.Ed.2d ——.

We do not think we should either try to draw the Equal Protection/First Amendment line or elucidate some principle of accommodation or in doing so embrace or reject *Ringers*. Before we adjudicate that problem of transcendent significance we should be certain that we are doing so in the light of a real Article III case and controversy on facts which really are, not what some one sup-

poses or says them to be. Byer v. Byer, 5 Cir., 1958, 254 F.2d 205.

The arguments of counsel highlighted what we do not know and the likely significance one way or the other of the fact once found. What we do not know[11] is whether this meeting was a purely private meeting or one to be open to the public.[12]

If it were closed to all save NSRP members and specifically invited guests the result might be one thing.[13] On the

organizations with discriminatory membership policies from using public recreation facilities solely on the basis of the membership policies. In so holding, the Court emphasized the individual's right to associate in private organizations.

The Supreme Court, on review, agreed that it was proper for the City to be enjoined from permitting exclusive access to public recreational facilities by segregated private schools. The Court reversed and remanded the case with directions to remand to the District Court, however, because it was unable to determine upon the record given whether the non-exclusive use of recreational facilities by private school groups or the exclusive use of such facilities by private nonschool organizations would "[involves] a government so directly . . . as to warrant court intervention on constitutional grounds." The Court pointed out that the appropriateness of the relief would depend entirely on factors such as the use the group made of the facility, the type of facility involved, the type of group involved, and whether such use was in contravention of any desegregation order. We refrain from any analysis of the Court's holding lest it infringe in any way on the prerogative of the panel reviewing the case or the District Court on remand.

11. This Court, not counsel, must bear the responsibility for the inadequacy of the record. Emphasizing the quickness of the hearing the Appellee Cason requested this Court to remand for an evidentiary hearing on this issue. Hindsight shows that it was a mistake to deny the motion.

12. Unlike the record in *Ringers* ours is silent on this fact. *Ringers* is far from clear. At one point the Court acknowledged as to the meeting triggering the suit:

On April 3, 1970 the Party again applied for a permit to rent the Yorktown High School auditorium, this time to hold a private meeting open only to "card-carrying

members and official supporters." 473 F.2d at 1013.

Later, by text and note 16, it declared:

But here, although the Party does not admit Negroes to membership, the proposed March 7 meeting was open to the public at large.16

16. The Party distributed leaflets which purported to invite only whites. But it is stipulated that "no member of the Negro race and/or Jewish religion has been, or would be, purposely excluded from attendance or participation in a public meeting called by the Party. Public meetings of the Party have been attended by members of the Negro race and/or the Jewish religion." 473 F.2d at 1018.

Judge Butzner in dissenting took another view:

Indeed, when the Board found that the Party had invited "the general public [excluding Jews and Negroes]" to the rally it commendably revoked the Party's permit to use the auditorium 1

1. The Board's action should be judged on the facts then before it, not on the Party's subsequent stipulation to the effect that it didn't mean what it said. Despite its subsequent self-serving declaration that Jews and Negroes could have attended the meeting, the Party remains insistent that Negroes are barred from membership. Consequently, they can not attend the private meetings in the school that the opinion of the court authorizes. 473 F.2d at 1020.

13. Implicit in the inquiry would be whether the provision for invited guests would be so limited as to be consistent with the assertedly private character of the meeting or whether it was merely a ruse through which all interested members of the white public would be admitted while all interested members of the black public would be excluded.

**954**

hypothesis that the meeting was in fact intended to be a bona fide private meeting it would be necessary to determine whether an organization with racially discriminatory membership policies could constitutionally be allowed to hold such a meeting in a public facility.

█ If, on the other hand, the Court finds that the meeting would have in fact been open to non-members but limited to the white public at large, we can say without reservation that the District Court's injunction would be entirely proper. If the meeting was not intended to be a private meeting at all but was to be open to the public at large whether white or black, then Appellee's request for admission to the meeting would dissolve but we would then have the problem decided by the Fourth Circuit (see note 12).

The fact that we require the District Court to make a factual finding as between the two possible types of use of the facilities is not intended to suggest that our ultimate decision of the law will necessarily depend upon the distinction made by the trial court. We simply pretermit this question until the record is completed.

Although this Court will, as it always has, face up to resolution of the potential conflict between the First Amendment right to associate in a public forum and the Fourteenth Amendment right to be free from racially discriminatory state action, the very shape of the issues as well as their resolution will be dependent upon the specific facts. Accordingly, we regard an ascertainment by the District Court of the public/private character of the intended meeting as a prerequisite to further constitutional adjudication.

The judgment is vacated and the cause remanded for further evidentiary hearing, findings of fact, conclusions of law and other action consistent with this opinion.

Vacated and remanded.