Harvey YOUNG, Plaintiff,

v.

D. L. HUTCHINS, as Chief, Department of Public Safety, Motor Vehicle Inspection Division, and Joseph C. Dekle, as Chairman, Civil Service Board, Jacksonville, Florida, Defendants.

George R. THURSTON, Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

Joseph C. DEKLE, as Chairman, Civil Service Board, Jacksonville, Florida, et al., Defendants.

Nos. 73–281–Civ–J–S, 73–767–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Oct. 8, 1974.

Paul C. Doyle, Carolyn S. Zisser, Duval County Legal Aid Ass'n, Jacksonville, Fla., for plaintiffs.

William Lee Allen, Asst. Counsel, Jacksonville, Fla., for defendants.

## ORDER, OPINION, INJUNCTION AND DECLARATORY JUDGMENT

CHARLES R. SCOTT, District Judge.

■ These are actions in which the plaintiffs seek a declaratory judgment that certain rules and regulations of the Civil Service Board of the City of Jacksonville, Florida,[1] relating to the suspension and dismissal of nonprobationary civil service employees for cause, are violative of the Due Process Clause of the

---

1. In the case involving Harvey Young, Case No. 73–281–Civ–J–S, the parties orally stipulated at the hearing held on June 28, 1974, that the City of Jacksonville, as a municipal corporation, could be dismissed from the case as a party defendant on the basis of the case of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109

Fourteenth Amendment. In addition, plaintiffs seek injunctive relief, including classwide back pay. For the reasons set forth below, the relief requested will be granted.

## I. FACTUAL BACKGROUND[2]

### (a) *Harvey Young, Case No. 73-281-Civ-J-S*

The plaintiff in Case No. 73-281-Civ-J-S, Harvey Young, had been in the employment of the Department of Public Safety, Motor Vehicle Inspection Division, City of Jacksonville, Florida, since August 7, 1968, and had achieved permanent civil service status after being duly qualified by examination and otherwise. On February 10, 1973, he reported to work and was directed by his supervisor to return home for allegedly having been "under the influence of intoxicants while on duty." On or about February 13, 1973, he received a letter[3] from the defendant D. L. Hutchins, Chief of the Motor Vehicle Inspection Division of the Department of Public Safety, stating that he was suspended for a period of 30

days without pay after which time he would be permanently discharged as an employee of that division. At no time prior to his suspension was he given notice of said suspension, an opportunity for a prior hearing, or other due process safeguards to determine the merits of the suspension. By the terms of the aforesaid letter from the defendant Hutchins, the plaintiff was automatically suspended for 30 days effective February 10, 1973, at the end of which period he was to be automatically permanently discharged.

Young's hearing before the Civil Service Board was set for April 24, 1973, 56 days after he received notice of his suspension and impending discharge. Plaintiff filed his complaint alleging denial of due process based upon his suspension and dismissal without pay from his public employment without first being afforded a prior hearing and other elementary due process procedures to determine the merits of defendant's grounds for suspension and dismissal. In the meantime, at his hearing before

---

(1973). In addition, pursuant to Rule 25 of the Federal Rules of Civil Procedure, Joseph C. Dekle has been automatically substituted as a successor to Clarence J. Suggs, as Chairman of the Civil Service Board, Jacksonville, Florida, in the same case. The parties remain the same, however, in Case No. 73-767-Civ-J-S.

The propriety of naming the individual members of the Civil Service Board as defendants herein is no longer an issue since it is now settled in the Fifth Circuit that appropriate individual city officials or members of boards are "persons" within the meaning of Section 1983 and may be named as defendants. Cason v. City of Jacksonville, 497 F.2d 949 (5th Cir. 1974); Sterzing v. Fort Bend Independent School District, 496 F.2d 92 (5th Cir. 1974); United Farm Workers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799 (5th Cir. 1974).

2. These cases are before the Court on cross motions for summary judgment. The facts set forth herein were stipulated by the parties pursuant to stipulations filed herein June 21, 1974. Therefore, there is no genuine issue of material fact and these cases are ripe for summary judgment.

3. The letter of February 13, 1973, to the plaintiff Young from the defendant Hutchins is set forth below:

February 13, 1973

Mr. Harvey Leroy Young
1757 W. 12th Street
Jacksonville, Florida.
Dear Mr. Young:
This will serve to notify you at (sic) effective Saturday, February 10, 1973, you are suspended for a period of thirty days without pay, after which you will be permanently discharged as an employee of the Motor Vehicle Inspection Division of the Department of Public Safety of the Consolidated City of Jacksonville. This action is taken pursuant to Civil Service Rule 12.4 governing suspension.
More specifically, you are hereby charged as follows:
Rule 12.4(b) Item # 6: The employee has been under the influence of intoxicants while on duty.
Specifically:
That you on Saturday, February 10, 1973, did allow yourself to appear for work in an intoxicated condition. You should govern yourself accordingly.

Very truly yours,
(Signature)
D. L. Hutchins, Chief

the Civil Service Board, his discharge was upheld.[4]

On April 19, 1973, this Court entered an injunction and order and held as follows: (1) that Young was not entitled to a hearing before he was temporarily suspended from employment for 30 days "because, in the interest of public safety, there was an overwhelming necessity for immediate action by defendants;" (2) that he was "entitled to a hearing within a reasonable time after suspension and was entitled to other elementary due process procedures to determine the merits of defendants' grounds for dismissal before he was permanently discharged from his civil service job;" (3) that "56 days between the time of the suspension of plaintiff and the hearing before the Civil Service Board [was] unreasonable and excessive;" (4) that he was "entitled to receive his back pay for the time period beginning 30 days after his suspension was effective —that is to say, March 12, 1973, when his invalid discharge became effective— until the time period ending when he [was to be] given a proper due process hearing before the Civil Service Board . . . ;" (5) that he was "not entitled to receive his back pay for the 30 day period of suspension beginning February 10, 1973, and ending March 11, 1973, unless the Civil Service Board, at the hearing on the merits so [ruled];"

(6) that plaintiff would suffer irreparable harm if the injunction did not issue; (7) that "[b]efore a person is deprived of a protected interest, he must be afforded an opportunity for some kind of hearing except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event;" and (8) that "[in] the interest of public safety it was necessary in this case to temporarily suspend plaintiff from his duties as auto safety inspector pending the outcome of the hearing on the merits" and that "[this] need supplied the requisite governmental interest and extraordinary situation to justify postponing the hearing until after the suspension."

On this basis, this Court: (1) required the defendants to provide Young with back pay for the period beginning March 12, 1973, until his permanent dismissal; and (2) enjoined the defendants "from permanently discharging plaintiff until a hearing [was] held and other elementary due process procedures were afforded him, in order to determine the merits of defendant's dismissal."

### (b) *George R. Thurston, Case No. 73–767–Civ–J–S*

The named plaintiff [5] in Case No. 73–767–Civ–J–S, George R. Thurston, began employment with the Department of

---

4. Young did not appeal his dismissal by certiorari to the Circuit Court of Duval County, Florida, as he had the right to do under the Florida Administrative Procedure Act, Florida Statute § 120.31. The defendants' argument that the plaintiff should have exhausted his state judicial remedies prior to initiating this suit is entirely without merit as the Fifth Circuit has uniformly rejected this assertion. Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971); Moreno v. Henckel, 431 F.2d 1299 (5th Cir. 1970); Hall v. Garson, 430 F.2d 430 (5th Cir. 1970). This holding is equally applicable to Case No. 73–767–Civ–J–S, which is proceeding on a class action basis and which was consolidated with the *Young* case on January 4, 1974.

5. By stipulation filed herein June 21, 1974, the parties agreed that Case No. 73–767–Civ–J–S is maintainable as a valid class action pursuant to Rule 23(a), (b)(2) of the Federal Rules of Civil Procedure. Therefore, the plaintiffs' motion to certify class,

filed herein June 20, 1974, in Case No. 73–767–Civ–J–S, will be granted. The class consists of all those employees of the City of Jacksonville who have achieved permanent civil service status and who, on or after April 10, 1973, have been suspended for 30 days without pay by the defendants without their being afforded prior notice of said suspension, an opportunity for a prior hearing, and other due process safeguards to determine the merits of the suspension in the absence of valid criteria promulgated by the Civil Service Board to determine whether an extraordinary situation exists where some valid governmental interest is at stake which justifies postponing the hearing until after the suspension. April 10, 1973, as the date service was obtained on the defendants in the *Young* case, represents the cutoff point for entry into the class of plaintiffs. It is on that date that the defendants were officially put on notice as to the possible illegality of their actions.

Housing and Urban Development of the City of Jacksonville on March 1, 1971, and achieved permanent civil service status with the City of Jacksonville on or about September 1, 1971. On August 13, 1973, Thurston reported to work and was handed a letter dated August 10, 1973, which informed him that he was suspended effective Monday, August 13, 1973, for a period of 30 days, without pay, after which time he would be permanently discharged as an employee of the City of Jacksonville. Thurston was charged with violating Civil Service Board Rule 12.4(b)(9) in that he was alleged to be "incompetent or inefficient in the performance of the duties of his position." At no time prior to Thurston's suspension was he given notice of said suspension, an opportunity for a prior hearing, or other due process safeguards to determine the merits of his suspension. Thurston appealed his dismissal before the Civil Service Board on Monday, September 10, 1973. However, his appeal was denied and his dismissal was upheld.

### (c) *The Board's Uniform Policy*

The parties have stipulated that it is the policy of the Civil Service Board of the City of Jacksonville that all permanent city employees who are to be permanently dismissed from their employment are automatically suspended for a period of 30 days without pay, after which time they are automatically dismissed.[6] Furthermore, during the period in which city employees are suspended from employment, the benefits of salary, seniority, vacation and sick leave are frozen and do not accrue.

The plaintiffs contend that their suspension for 30 days without pay from employment pursuant to Civil Service Board Rules [7] without first affording

---

**6.** Therefore, it conclusively appears that the requirement of Rule 23(b)(2) of the Federal Rules of Civil Procedure, that "the party opposing the class has acted or refused to act on grounds generally applicable to the class", has been met, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

**7.** The Civil Service Board rules which are at issue in these cases are set forth below:

12.4 DISMISSALS, DEMOTIONS AND SUSPENSIONS

(a) The Appointing Authority may suspend any employee with status only for cause, for a period not to exceed thirty (30) calendar days, after furnishing the employee, the Manager, and the Civil Service Board with a detailed written statement of the reasons for suspension. The Appointing Authority may dismiss any employee with status only for cause following any suspension of thirty (30) days. Prior to suspension or dismissal, the Appointing Authority shall furnish the employee, the Manager, and the Civil Service Board a detailed written statement of the reasons for suspension. The Civil Service Board will send a copy of the appropriate section of the Rules by registered or certified mail, return receipt requested, to any employee who has been so disciplined.

(b) Just causes for dismissal, demotion in the service or suspension are listed below although dismissal, demotion or suspension may be made for other just causes.

(1) The employee has been convicted of a felony, or of a misdemeanor involving moral turpitude.

(2) The employee has wilfully, wantonly, unreasonably, unnecessarily or through culpable negligence been guilty of brutality or cruelty to an inmate or prisoner of an institution or to a person in custody, provided the act committed was not necessarily or lawfully done in self-defense, or to protect the lives of others, or to prevent the escape of a person lawfully in custody.

(3) The employee has violated any of the principles of the merit system or these Rules.

(4) The employee has been guilty of any conduct unbecoming an officer or employee of the Consolidated Government, either on or off duty.

(5) The employee has violated any lawful official regulation or order or failed to obey any proper direction made and given by a superior officer.

(6) The employee has been under the influence of intoxicants while on duty.

(7) The employee has been guilty of insubordination or of disgraceful conduct.

(8) The employee is offensive in his conduct or language in public or towards the public, officials or employees.

(9) The employee is incompetent or inefficient in the performance of the duties of his position.

(10) The employee is careless or negligent with the moneys or other property of the Government.

(11) The employee has failed to pay or make reasonable provisions for future payment of his debts to such an extent that such failure be detrimental to the reputation of the Consolidated Government Service.

(12) The employee has used or threatened to use, or attempted to use, personal or political influence in securing promotion, leave of absence, transfer, change of pay rate, or character of work.

(13) The employee has induced or has attempted to induce, an officer or employee of the Consolidated Government to commit an unlawful act or to act in violation of any lawful department or official regulation or order.

(14) The employee has taken for his personal use from any person any fee, gift, or other valuable thing in the course of his work or in connection with it, when such gift or other valuable thing is given in the hope or expectation of receiving a favor or better treatment than that accorded other persons.

(15) The employee has engaged in outside business activities on Government time, or has used Consolidated Government property for such activity in violation of Rule 11.4.

(16) The employee has failed to maintain a satisfactory attendance record.

(c) An employee with status may appeal actions under this section according to Rule 13.

(d) A dismissed employee may be required to forfeit all accrued leave.

(e) Appeal of an grievance by an employee may not of itself be used as a ground for disciplinary action.

(f) An appointing authority may suspend an employee for up to a cumulative total of three (3) days in any one calendar year without the employee having the privilege of appeal.

. . . .

## 12.8 SUSPENSIONS

(a) An appointing authority, upon written notice to the employee, stating the reasons therefor, a copy of which shall be sent to the Manager and the Civil Service Board, may suspend any employee without pay or other compensation for disciplinary cause for up to a maximum of thirty (30) days, except as provided in subparagraph (b) hereof. Any suspension over three (3) days in one calendar year may be appealed directly to the Civil Service Board.

(b) Where an employee has been suspended as provided in subparagraph (a) of this Rule and the reason for such suspension is that such employee is charged with the commission of a crime, then and in that event, said employee may request the Civil Service Board that such suspension be changed to a suspension without pay until such criminal charges have been disposed of. The Civil Service Board may approve such request provided such employee has filed with the Civil Service Board a waiver in writing to the effect that if he is successful in his appeal of said suspension to the Civil Service Board that he waives any right to salary during such period of suspension.

## 13.4 APPEAL FROM DISMISSALS, DEMOTION OR SUSPENSIONS

Any employee with status who is dismissed, demoted or suspended (for a period of more than the cumulative total of five (5) calendar days in any one calendar year) in accordance with Rule 12 may appeal to the Civil Service Board within ten (10) days after being notified by certified mail, return receipt requested, by the Civil Service Board.

Although the actual *nature* of the hearing to be accorded is not at issue in this case, the applicable regulation is set forth below to demonstrate the adequacy of the hearing once it is so provided:

## 13.6 CIVIL SERVICE BOARD HEARING

(a) Responsibility of Civil Service Board: When an employee files a complaint with the Civil Service Board in a case involving his dismissal, demotion or reduction in rank or suspension, it shall be the duty of the Board to ascertain to the best of its ability the facts of the case, and after weighing all available evidence to report its findings and decision to the appointing authority and employee, and make such other disposition as they may deem appropriate.

(b) Consideration of Complaint-Setting Date for Hearing: If a request for hearing is contained in such complaint, a public hearing shall be held thereon within (20) days after the filing of said complaint, or at such later date as the Board deems proper, at such time and place as shall be fixed by the Chairman of the Board.

(c) Notice of Hearing: Notice of the time and place for public hearing shall be given promptly by the Secretary of the Board to the complainant and at least seven (7) days prior to the hearing by Registered Mail, addressed to the complainant at his last known post office address.

(d) Board Shall Have Access to Pertinent Data: In order to properly discharge its function in regard to the review of such disciplinary actions, the Board shall have access to any files, correspondence, memoranda, etc., which they feel might be pertinent to the case and shall have the right of questioning any officers or employees of the

them notice of said suspension, an opportunity for a prior hearing, and other due process safeguards, to determine the merits of the suspension in the absence of valid criteria promulgated by the Civil Service Board to determine whether an extraordinary situation exists where some valid governmental interest is at stake that justifies postponing the hearing until after the suspension is a denial of procedural due process under the Fourteenth Amendment in that it operates to deprive the plaintiffs of a "property" interest in continued governmental

employment without proper due process safeguards.

The defendants, on the other hand, contend that they are complying with procedural due process in that: (1) the Civil Service Board Rules provide that where an employee is to be dismissed he is given written notice of a 30 days suspension without pay with dismissal to follow at the end of 30 days; (2) the rules further provide that an employee may appeal to the Civil Service Board within ten days after suspension; (3) if an appeal is taken, he must, under the

---

Consolidated Government whom they feel may be able to shed light on the circumstances involving the disciplinary action in question. No officer or employee shall himself be subject to disciplinary action as a result of his testimony given in such hearing except in case of perjury.

(e) Scope of the Civil Service Board's Review: In its review of a disciplinary action, the Civil Service Board shall limit itself, in the absence of over-riding cause for considering extraneous matters, to a consideration of: (1) the question of the appropriateness of the discipline to the transgression, with regard to the case under consideration, and (2) the question of whether the employee is guilty of the transgression with which he is charged.

(f) Hearings to be informal: Hearings shall be conducted in an informal manner with every effort made by the Civil Service Board to avoid the appearance of conducting a trial as in a court of law.

(g) Adjournments: Public hearings on complaints may be adjourned only upon good cause shown, and in the event that the complainant shall fail to appear in person or by counsel at the time and place set for hearing, he shall be presumed to have waived his right to further hearing and the Board may proceed forthwith to investigate and determine the case.

(h) Representation: Complainants may, at their election, be represented by counsel. The Civil Service Board and the Appointing Authority may be represented by counsel provided by the City Attorney.

(i) Subpoenas: Complainants and appointing authorities involved in a disciplinary action hearing before the Civil Service Board may file with the Board the names and addresses of persons to be subpoenaed by the Civil Service Board to testify during such proceedings.

(j) Court Reporter: Complainant may retain the services of a Court Reporter to record the proceedings at his own expense.

(k) Conduct of Hearings: Hearings before the Civil Service Board shall be public and shall be conducted in an orderly manner with a view to the presentation of material facts so that a fair and impartial decision may be made. The Chairman of the Board shall have full authority at all times to maintain orderly procedure and to reject irrelevant matters and limit the hearings to relevant facts.

(1) Either the complainant or the Appointing Authority may require that all witnesses, except for one testifying, the representatives of the Department Head and the complainant, be excused from the hearing.

(m) Decisions: The decision of the Civil Service Board shall be promptly reduced to writing, setting forth its findings and decision, and be filed with the Personnel Manager with copy to the Mayor. The Board's decision may be as follows:

(1) The Board may concur in the action of demotion, dismissal or suspension.

(2) If the Board finds that the action complained of was taken by the Appointing Authority for any political, religious, or ethnic reasons, the Board shall reinstate the employee to his former position or a position of like status and pay, without loss of pay for the period of his dismissal, demotion, or suspension and without penalization.

(3) In all other cases, the findings and decisions of the Board may be to reinstate the employee with or without pay for the period of the dismissal, demotion, or suspension, modify the original decision of discharge, demotion or suspension.

(4) When any employee is dismissed and not reinstated after such appeal, the Board in its discretion may recommend that his name be placed on an appropriate reemployment list for employment in any similar position other than the one from which he has been removed.

rules be given a hearing before the board within 20 days after the appeal, thus affording a hearing prior to the effective date of discharge.

## II. APPLICABILITY OF ARNETT v. KENNEDY

To determine the appropriate legal standard to apply in these cases, the Court must ascertain to what extent the most recent pronouncement of the Supreme Court regarding procedural due process and public employment, Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), is applicable. Unfortunately, no clear majority opinion emerged from this case and the five separate opinions served merely to obfuscate what had been until that time a relatively settled area of the law. However, a close reading of the various opinions rendered in the case provide some guidance in deciding the instant cases.

In *Arnett*, a nonprobationary federal employee of the Office of Economic Opportunity was discharged by his supervisor after the supervisor had given him notice of written charges against him. One of the charges was that the plaintiff employee, "without any proof" and "in reckless disregard of the actual facts" known to him or reasonably discoverable by him, had publicly stated that the supervisor and his assistant had attempted to bribe a third party. The affected employee had chosen not to exercise his rights under the administrative regulations to reply orally or in writing to the charges, but had instead asserted that he had a right to a trial-type evidentiary hearing before an impartial hearing officer before he could be dismissed from his federal employ-

ment, and that his statements were protected by the First Amendment.

The employee's discharge was effected pursuant to the provisions of the Lloyd-LaFollette Act, 5 U.S.C. § 7501, authorizing removal or suspension without pay of a nonprobationary government employee "only for such cause as will promote the efficiency of the service", and requiring that the employee be given written notice of the charges against him, but not requiring a pretermination evidentiary hearing. In addition, the implementing civil service regulations afforded a post-dismissal evidentiary hearing on an administrative appeal by the employee, with full back pay benefits if the employee prevailed.

The employee contended, on behalf of himself and all those similarly situated, that the removal standards and procedures established by the Lloyd-La-Follette Act unconstitutionally interfered with governmental employees' freedom of expression and denied them procedural due process under the Fifth Amendment.

Although unable to agree on an opinion, six members of the Court held, in pertinent part, that the discharge procedures established by the Act did not violate procedural due process by failing to require a trial-type evidentiary hearing *before*, rather than after, the employee's removal.

In a plurality opinion which expressed the views of only three members of the Court, Mr. Justice Rehnquist, joined by Chief Justice Burger and Mr. Justice Stewart, stated, *inter alia*,[8] that the Lloyd-LaFollette Act, in failing to require a preremoval hearing, did not violate the Due Process Clause of the Fifth Amendment, because the Act did not

---

8. The Court's plurality opinion also stated that: (1) the Act did not require that the person making the initial agency decision to discharge an employee must be an official other than the one making the charges against the employee even where the charges involved public statements of the employee accusing the official with misconduct, 416 U.S. at 134, 155, 94 S.Ct. 1633 at 1645, 40 L.

Ed.2d at 34, n. 21; (2) the Act's provision for the discharge of an employee "for such cause as will promote the efficiency of the service" was not unconstitutionally vague or overbroad. 416 U.S. at 157–163, 94 S.Ct. at 1646–1649, 40 L.Ed.2d at 35–38. These issues were not raised in the instant cases and need not be discussed.

create a "property" interest, *see* Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that is, an expectancy of job retention requiring procedural due process protection beyond that afforded under the statute and the applicable regulations.

In a concurring opinion, Justices Powell and Blackmun enunciated the view that the Act, in guaranteeing a nonprobationary employee continued employment absent "cause" for discharge, conferred a "property" interest protected under the Due Process Clause as to notice and a hearing, and the procedural provisions of the Act could not limit the extent of procedural protection to which an employee was constitutionally entitled.

Mr. Justice Powell then set forth what he considered to be the controlling test as to whether an evidentiary hearing, including the right to present favorable witnesses and to confront and examine adverse witnesses, must be accorded *before* removal:

> The resolution of this issue depends on a balancing process in which the Government's interest in expeditious removal of an unsatisfactory employee is weighed against the interest of the affected employee in continued public employment.

416 U.S. at 167, 94 S.Ct. at 1651, 40 L.Ed.2d at 41.

Mr. Justice Powell then concluded, on this basis, that the employee's procedural due process rights were not violated in that case since the removal procedure afforded under the Act and the related regulations provided "a reasonable accommodation of the competing interests" so as to minimize the risk of error in the initial removal decision and to "provide for compensation for the affected employee should that decision eventually prove wrongful." 416 U.S. at 165, 94 S. Ct. at 1650, 1652, 40 L.Ed.2d at 42–43.[9]

Mr. Justice White, in a separate opinion in which he concurred in part and dissented in part, agreed with the Court's plurality opinion only as to the holding that the Act and its attendant regulations were not void for overbreadth. However, he agreed with Justices Powell and Blackmum and the dissenters that the Act created a "property" interest in continued public employment. In addition, he stated that although procedural due process required a hearing at some time before a nonprobationary employee was *finally* terminated for misconduct, the pretermination hearing provided by the federal statute satisfied minimum procedural due process requirements and that it was not necessary that the employee be afforded a plenary trial-type hearing *before* rather than after removal from active status.[10]

Justices Marshall, Brennan and Douglas[11] dissented, stating, in pertinent part, that: (1) the Act created a "property" interest in continued government employment for purposes of due process, so that the statutory procedures were required to meet minimum constitutional standards; (2) in determining whether due process required a full evidentiary

---

9. Justices Powell and Blackmun also believed that neither the Act nor the Due Process Clause required that the charges for removal be initially considered by an impartial decisionmaker and that the federal act was neither unconstitutionally vague nor overbroad. 416 U.S. at 163, 94 S.Ct. at 1649, 40 L.Ed.2d at 39.

10. In addition, Mr. Justice White asserted that, to avoid possible due process problems, the Act should be construed to require that an impartial hearing officer must be afforded at the evidentiary hearing. On this basis, he felt that since that requirement was not complied with, the hearing officer having been the object of alleged defamation forming the basis for the employee's discharge, the employee should have been reinstated with back pay. 416 U.S. at 196, 94 S.Ct. at 1665–1667, 40 L.Ed.2d at 57–59.

11. Mr. Justice Douglas also wrote a separate dissent in which he stated that the employee's discharge because of his public statements about his supervisors violated his First Amendment right to freedom of speech. 94 S.Ct. at 1668–1670, 40 L.Ed.2d at 61–63.

hearing prior to termination, the government's interests must be balanced against those of the discharged employee; (3) upon balancing those interests, due process required a plenary evidentiary hearing before an impartial decision maker, prior to the employee's removal.[12]

Although these various opinions badly fragmented whatever precedential value *Arnett* may have as a basis for a decision in the instant cases, several threads emerge which provide some direction. First of all, six justices agreed that the Lloyd-LaFollete Act which guaranteed the affected employee continued employment absent "cause" for discharge clearly conferred on him a legitimate claim of entitlement which constituted a "property" interest under the Fifth Amendment. 416 U.S. at 165, 94 S.Ct. at 1650, 40 L.Ed.2d at 40. (Powell and Blackmun, JJ., concurring in part and concurring in the result in part); 416 U.S. at 165, 94 S.Ct. at 1650, 40 L.Ed.2d at 40. (White, J., concurring in part and dissenting in part); 416 U.S. at 203, 212, 94 S.Ct. at 1669, 1673; 40 L.Ed.2d at 63–66 (Marshall, Douglas and Brennan, JJ., dissenting).

Secondly, at least six justices held that the resolution of the issue whether an evidentiary hearing including the right to present favorable witnesses and to confront and examine adverse witnesses, must be accorded before removal seems to depend on a balancing type of analysis in which the government's collective interest in expeditious removal of an unsatisfactory employee is weighed against the individual interest of the affected employee in continued public employment. 416 U.S. at 167, 94 S.Ct. at 1651, 40 L.Ed.2d at 41 (concurring opinion of Justices Powell and Blackmun), 416 U.S. at 198–203, 94 S.Ct. at 1666–1668; 40 L.Ed.2d at 59–61 (White, J., concurring in part and dissenting in part) 416 U.S. at 210, 213, 94 S.Ct. at 1672, 1673; 40 L.Ed.2d at 66–67 (Marshall, Douglas and Brennan, JJ., dissenting).

Third, the three "swing" justices held that a plenary hearing seems to be constitutionally required at some stage in the proceedings and it must occur *before* a "final taking" of the "property" interest (that is, final termination) even though it may occur *after* the initial removal from active duty status. 416 U.S. at 167–173, 94 S.Ct. at 1651–1653; 40 L.Ed.2d at 42–43. (Powell and Blackmun, JJ., concurring) 416 U.S. at 184, 94 S.Ct. at 1659; 40 L.Ed.2d at 51 (White, J., concurring in part and dissenting in part). *But see,* 416 U.S. at 216–229, 94 S.Ct. at 1675–1681; 40 L. Ed.2d at 69–75. (Marshall, Douglas and Brennan, JJ., dissenting).

Fourth, the three "swing" justices also seem to hold that the affected employee must be afforded advance written notice of the reasons for his proposed dismissal and the materials on which the notice is based prior to removal. In addition, it would also appear that the employee would be constitutionally entitled to respond to the charges both orally and in writing, including the submission of affidavits, as under the Lloyd-La-Follette Act, before the initial removal from the job. Furthermore, he should at least be given the opportunity, as under the Act, to appear personally before the official having the authority to make or recommend the final decision before his initial removal. These procedures, in conjunction with the post-removal but pretermination plenary evidentiary hearing and possible reinstatement with back pay, were deemed to adequately minimize the risk of error attendant to the initial removal decision. 416 U.S. at 167–172, 94 S.Ct. at 1651–1653, 40 L.Ed.2d at 42–43 (Powell and Blackmun, J.J., concurring); 416 U.S. at 192–196, 94 S.Ct. 1663–1665, 40 L.Ed. 2d at 56–57 (White, J., concurring in part and dissenting in part). Of course, the three dissenting justices

---

12. The dissenting justices also asseverated that the Act was unconstitutionally vague and overbroad. 416 U.S. at 224–231, 94 S.Ct. at 1679–1682; 40 L.Ed.2d at 75–78.

would have gone further and held that a plenary evidentiary hearing was also constitutionally mandated prior to the initial removal.

### III. STATE OF THE LAW pre-*ARNETT*

As a backdrop to these somewhat amorphous guidelines, this Court must also consider the vast body of settled law relating to procedural due process which requires adequate notice and a hearing before a person can be deprived of an important interest in life, liberty or property, Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969) (pre-judgment garnishment of wages); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (revocation of a driver's license); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972) (repossession of consumer goods); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (revocation of parole); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1973) (termination of college instructors by public educational institutions); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L. Ed.2d 656 (1973) (revocation of probation), "except for extraordinary situations where some valid governmental interest is at stake which justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

With this framework in mind, it is now appropriate to apply the law to the facts at hand.

### IV. INJUNCTIVE RELIEF AND BACK PAY FOR THE NAMED PLAINTIFFS

As pointed out previously, the announced policy of the Civil Service Board of the City of Jacksonville is that all city employees who are to be permanently dismissed from their employment are *automatically* suspended for a period of 30 days without pay after which time they are *automatically* permanently discharged. During the period in which city employees are suspended from employment, the benefits of salary, seniority, vacation and sick leave are *automatically* frozen and do not accrue. The employee receives no *advance* written notice of his impending suspension or of the charges on which said suspension is based. The suspended employee is afforded no opportunity to refute the charges, either orally or in writing, prior to the suspension. The employee may appeal the dismissal within ten days *after* he has been suspended and the board is required, under the rules, to provide a hearing within 20 days thereafter.

By comparison, the plaintiff in *Arnett* was afforded, by statute and regulations, numerous safeguards to minimize the risk of error in the initial removal decision which were not available to the plaintiffs herein. A nonprobationary *federal* employee must be provided with written notice of the reasons for his proposed discharge and the materials on which the notice is based at least 30 days prior to removal. He is also accorded the right to respond to the charges both orally and in writing, including the submission of affidavits. Upon request, he is also entitled to an opportunity to appear before the official having the authority to make or recommend the final decision.[13] *See* 5 C.F.R.

13. The only element which the federal scheme has in common with the instant regulatory framework is that a post-removal plenary hearing is available, at which the employee may be awarded back pay if reinstated. This element, however, does not go to the minimization of the risk of initial error but only provides for compensation for the affected employee if the initial decision proves erroneous. The question of interim deprivation of a "property" interest pending a final evidentiary hearing thus still remains.

§§ 752.262, 771.208 and 772.305; 5 U.S. C. § 5596.

It seems clear from the concurring opinions in *Arnett* that, were it not for the existence of these critical procedural safeguards to minimize the risk of error attendant to initial removal,[14] the three "swing" justices would not have sustained the federal statute and regulations under attack therein. It is also clear that these important safeguards are noticeably absent from the rules and regulations at issue herein. The absence of these safeguards in the instant cases becomes especially crucial when one considers that, effectively, a city employee is *dismissed* once the period of his "suspension" commences by virtue of the board's uniform policy of *automatic* suspension for 30 days prior to final discharge, during which time substantially all the suspended employee's benefits are terminated. Thus, in reality, "suspension" under the present state of facts in these cases is the functional equivalent of *permanent discharge* subject to the condition subsequent that the employee may be reinstated with back pay upon a successful appeal.

Therefore, on the basis of the foregoing analysis, this Court must conclude that, because of the absence of the procedural safeguards which were deemed to be so critical in Arnett v. Kennedy, *supra,* in serving to minimize the risk of error in the initial removal of a nonprobationary federal employee, the Civil Service Board Regulations at issue herein are violative of procedural due process. Therefore, the defendants will be required, by injunction, either: (1) to provide adequate notice and a plenary evidentiary hearing prior to the suspension *without* pay of any nonprobationary city employee; or (2) to promulgate sufficient procedural safeguards which are specifically designed to minimize the risk of error attendant to the initial removal and suspension of any city employee. Arnett v. Kennedy, *supra;* Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).[15]

An exception to the foregoing requirements will be permitted where it is determined, by objective criteria, that retention of the employee would result in damage to municipal property or would be detrimental to the interests of the city government, or would be injurious to the employee himself, to a fellow employee or to the general public.[16] In such circumstances, the affected em-

14. As pointed out in Mr. Justice White's separate opinion in *Arnett, supra,* 416 U.S. at 200, 94 S.Ct. at 1667, 40 L.Ed.2d at 60. "[R]ules of procedure are often shaped by the risk of making an erroneous determination". *See also* In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring).

15. On the basis of the conclusion reached in *Arnett, supra,* by six of the justices that the Lloyd-LaFollette Act which guaranteed continued employment absent "cause" for dismissal conferred a legitimate claim which constituted a "property" interest under the Fifth Amendment, it cannot be doubted that the regulations herein created a sufficient claim of entitlement so as to constitute a

"property" interest under the Fourteenth Amendment. This is so because "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits". Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

16. These standards for the emergency suspension of a seriously disruptive employee are almost identical to the ones set forth in the Federal Civil Service Regulations. *See*

ployee may be immediately suspended without pay. However, this Court holds that procedural due process requires that, in such a situation, the employee must be provided a detailed written notice of charges within 24 hours after the commencement of the suspension period and that he must be afforded the opportunity for an evidentiary hearing before an impartial decisionmaker [17], within 20 days thereafter. These time limitations do not apply, however, in these circumstances, where the suspension is *with* pay. In that event, the notice and the opportunity for a hearing need not be provided until prior to the time the affected employee is to be finally dismissed.[18] As part of this Court's injunction, the defendants will be required to promulgate sufficiently detailed criteria for determining when immediate suspension without pay would be appropriate under the legal standards set forth above.

■■■ A comparison of the factual situations of the named plaintiffs provides a rough guide to the defendants for promulgation of these criteria. Plaintiff Young's being intoxicated while on duty is certainly a sufficient basis for immediate suspension because the governmental interest in the alacritous removal of an intoxicated employee from a motor vehicle inspection station outweighs the employee's individual interest in remaining on active duty status. The highly disruptive effect of his remaining on the job is obvious. On the other hand, as to plaintiff Thurston, the record is entirely devoid of any justification for his immediate suspension without pay without the benefit of advance formal notice and the opportunity for a hearing. Merely being deemed "incompetent or inefficient in the performance of the duties of his position" without further elaboration does not justify the deprivation of a person's very livelihood without prior notice and a hearing or other procedural safeguards to minimize the risk of error. Since 30 days was a reasonable time period after suspension within which to have a hearing at that time because the defendants did not have the benefit of this Court's opinion, the back pay order with respect to plaintiff Young will stand as originally entered. However, for the reasons stated above, plaintiff Thurston is entitled to back pay from the date of his suspension, August 13, 1973, to the date of his appeal before the Civil Service Board, September 10, 1973.[19]

5 C.F.R. § 752.02(d) (1974). In these limited circumstances, the affected *federal* employee is entitled, under the applicable federal regulations, to at least 24 hours advance notice of "proposed adverse action", *i. e.*, suspension, and the agency may place him in a nonduty status *with pay* for such time, not to exceed five (5) days, as is necessary to effectuate the suspension.

17. *See* Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970).

18. These holdings are consistent with the previously enunciated well-settled constitutional requirement that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event". Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original).

*See also* Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961); Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Since the employee suspended under emergency circumstances and without pay, will, under this injunction, be afforded a hearing within such a short time after his suspension begins, the deprivation of the property interest involved will be of limited duration. Reinstatement, if any, at the end of the 20 day period should greatly minimize whatever hardship that accrued from the initial suspension without pay.

19. Although neither the plaintiffs nor the defendants initially raised the issue of the Eleventh Amendment as a bar to back pay to the plaintiffs because of defendants' ille-

## V. REINSTATEMENT AND CLASS-WIDE BACK PAY

 This Court also concludes that classwide back pay for nonnamed class members would be an appropriate additional remedy under the facts of these cases. As the plaintiffs correctly point out, back pay has been held to be an integral part of injunctive relief in Section 1983 cases. In Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970), the Court stated:

> Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure. . . .

427 F.2d at 324.

Additional support for classwide back pay may be found in several recent Title VII Civil Rights Act cases. Franks v. Bowman Transportation Company, 495 F.2d 398, 421–422 (5th Cir. 1974); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974); Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364 (5th Cir. 1974); United States v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973). These cases are closely analogous to the instant cases in that back pay in both types of cases serves to vindicate fundamental constitutional rights and also to return the plaintiffs to the position they would have occupied but for the defendants' illegal actions.

In addition, Rule 23(b)(2) of the Federal Rules of Civil Procedure does not prohibit back pay to nonnamed class members in a class action under that subdivision of the rule. Franks v. Bowman Transportation Company, *supra*, 495 F.2d at 422; Pettway v. American Cast Iron Pipe Co., *supra*; Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir. 1971), cert. dismissed 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655. Therefore, this Court holds that classwide back pay is an appropriate remedy in the instant cause.

Those plaintiffs who, on or after April 10, 1973, have already been suspended for 30 days and have had their Civil Service Board hearing and whose dismissal was upheld will be entitled to back pay for the period of their suspension. However, the defendants will not be required to reinstate said plaintiffs. Those plaintiffs whose automatic 30 day suspensions have not yet expired and who have not yet had a Civil Service Board hearing will be reinstated with back pay pending their hearing. Those plaintiffs who, on or after April 10, 1973, were given a punitive suspension and whose suspensions were upheld by the Civil Service Board but were not permanently discharged are entitled to back pay for the period of their suspension. Those plaintiffs whose immediate removal from their job was necessary to

gal actions, this Court feels it necessary to mention the question in passing.

The Supreme Court held in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that the Eleventh Amendment operates as a bar to a federal court's awarding of retroactive welfare benefits where the payment of funds from the state treasury is required. However, footnote 12 of that opinion specifically stated that "a county does not occupy the same position as a state for purposes of the Eleventh Amendment", 94 S.Ct. at 1358, 39 L.Ed.2d at 675, thus recognizing "the long established rule that while county action is generally state action for purposes of the Fourteenth Amendment, a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment."

Because of the unique governmental nature of the Consolidated City of Jacksonville which unites the functions of both city and county governmental units into one essentially county-wide municipality, the defendants, as elective city officials, are clearly outside the scope of any Eleventh Amendment bar under the authorities cited in Edelman v. Jordan, *supra*. See Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct, 1785, 36 L.Ed. 2d 596 (1973); Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

avoid damage to municipal property or would be detrimental to the interests of the city government, or would be injurious to the employee himself, a fellow employee or to the general public will *not,* however, be entitled to back pay for the period of their suspension assuming adequate notice and a hearing was provided within 30 days after the suspension period began. If a hearing was not provided within 30 days after the suspension period began, then they will be entitled to back pay for that time period prior to the hearing which exceeds 30 days, as in plaintiff Young's case. On this basis, Case No. 73–767–Civ–J–S will be remanded to the defendants for a determination of the precise amount of back pay to which each member of the affected class of plaintiffs is entitled under the standards set forth above.

Therefore, it is

Ordered and adjudged:

That by stipulation, filed herein June 21, 1974, plaintiffs' motion to certify class, filed in Case No. 73–767–Civ–J–S on June 20, 1974, is hereby granted; and, it is further

Ordered and adjudged:

That Case No. 73–767–Civ–J–S is maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; and, it is further

Ordered and adjudged:

That the class of plaintiffs in Case No. 73–767–Civ–J–S consists of all those employees of the City of Jacksonville who have achieved permanent civil service status and who, on or after April 10, 1973, have been suspended for 30 days without pay by the defendants without their being afforded prior notice of said suspension, an opportunity for a prior hearing and other procedural due process safeguards to determine the merits of suspension in the absence of valid criteria promulgated by the Civil Service Board to determine whether an extraordinary situation exists where some valid governmental interest is at stake that justifies postponing the hearing until after the suspension; and, it is further

Ordered and adjudged:

That the plaintiffs' motion for summary judgment, filed in Case No. 73–767–Civ–J–S on June 17, 1974, is hereby granted to the extent set forth below; and, it is further

Ordered and adjudged:

That the plaintiff's motion for summary judgment, filed in Case No. 73–281–Civ–J–S on May 19, 1973, is hereby granted only to the extent set forth below; and, it is further

Ordered and adjudged:

That defendants' motions for summary judgment, filed herein June 20, 1974, are hereby denied; and, it is further

Ordered and adjudged:

That Rules 12.4, 12.8 and 13.4 of the Civil Service Board, Jacksonville, Florida, are hereby declared to be violative of the Fourteenth Amendment to the Constitution of the United States for the reasons set forth above in this Court's opinion; and, it is further

Ordered and adjudged:

The defendants in these cases are hereby enjoined from suspending or dismissing without pay any nonprobationary employee of the City of Jacksonville, Florida, without providing that employee prior notice and an opportunity for a hearing until such time that said defendants promulgate sufficient procedural safeguards which are specifically designed to minimize the risk of error attendant to the initial removal and suspension of any city employee, except in those extraordinary situations where it is determined, by objective criteria, that retention of the employee would result in damage to municipal property or would be detrimental to the interests of the city government, or would be injurious to the employee himself, to a fellow employee or to the general public; and, it is further

Ordered and adjudged:

That, in those extraordinary situations alluded to in the previous paragraph, the defendants are hereby enjoined from suspending and/or dismiss-

ing a nonprobationary city employee without pay without providing that employee a detailed written notice of charges within 24 hours after commencement of the suspension period and an opportunity for an evidentiary hearing before an impartial decisionmaker within 20 days thereafter; except that, in such an extraordinary situation, where the suspension is *with* pay the notice and hearing need not be provided until prior to the time the affected employee is to be finally dismissed; and, it is further

Ordered and adjudged:

That the defendants are hereby required to promulgate sufficiently detailed criteria for determining when immediate suspension without pay would be appropriate in extraordinary situations under the standards set forth above; and, it is further

Ordered and adjudged:

That the plaintiff Harvey Young is not entitled to any back pay in addition to what this Court already awarded in its prior order and injunction of April 19, 1973; and, it is further

Ordered and adjudged:

That the defendants are hereby required to provide back pay to those members of the affected class of plaintiffs who have already been suspended for 30 days and have had their post-suspension Civil Service Board hearings for the period of their suspension; and, it is further

Ordered and adjudged:

That the defendants are hereby required to reinstate with back pay all those plaintiffs whose automatic 30 days suspensions have not yet expired and who have not yet had a Civil Service Board hearing pending their suspension; and, it is further

Ordered and adjudged:

That the defendants are required to provide back pay to those members of the affected class of plaintiffs who were given a punitive suspension and whose suspensions were upheld by the Civil Service Board but were not permanently discharged for the period of their suspension; and, it is further

Ordered and adjudged:

That those members of the affected class of plaintiffs whose immediate removal and suspension were necessary to avoid damage to municipal property or would be detrimental to the interests of the city government, or would be injurious to the employee himself or to the general public are not entitled to back pay assuming adequate notice and a hearing was provided within 30 days after the suspension period began. If a hearing was not provided within 30 days after the suspension period began, then the defendants will be required to provide them with back pay for that time period prior to the hearing which exceeds 30 days; and, it is further

Ordered and adjudged:

That Case No. 73–767–Civ–J–S is hereby remanded to the defendants for a determination of the precise amount of back pay to which each plaintiff is entitled under the standards enunciated in the previous paragraphs; and, it is further

Ordered and adjudged:

That this Court retains jurisdiction of Case No. 73–767–Civ–J–S for the purpose of implementation of this order, injunction and declaratory judgment; and, it is further

Ordered and adjudged:

That Case No. 73–281–Civ–J–S is hereby dismissed and final judgment will be entered contemporaneously herewith in accordance with this order, opinion, injunction and declaratory judgment; and, it is further

Ordered and adjudged:

This order, opinion, injunction and declaratory judgment constitutes this Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.